## Scott, Appellant, v. Huston.

*Trespass—False representations—Purchase of shares of stock—Statement of condition of corporation—Prospectus—Nonsuit.*

In an action to recover damages for false representations alleged to have been made at the time of the purchase by plaintiff from defendants of certain shares of stock of a corporation, plaintiff based his right to recover on the ground that the defendants concealed from him the existence of an outstanding oil and gas lease upon approximately one-half of the land owned by the corporation, and on defendants' failure to disclose the price at which they had a short time previously purchased a large number of shares. It appeared that before purchasing the stock plaintiff examined the prospectus issued by the corporation, and visited the property and saw the oil and gas being produced; that after becoming a stockholder he was elected a member of the board of directors, in which capacity he continued to serve for a period of four years, at the expiration of which time, after unsuccessful efforts had been made to dispose of the property and the stockholders were required to advance money to pay taxes, he attempted to return his stock, which the defendants refused to accept. *Held,* the court did not err in entering a nonsuit.

Argued Oct. 26, 1914. Appeal, No. 4, Oct. T., 1914, by plaintiff, from judgment of C. P. Allegheny Co., Jan. T., 1911, No. 112, refusing to take off nonsuit in case of James Scott v. James A. Huston, David P. Black, James N. Jarvis and William S. VanDyke. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass for false representations. FRAZER, P. J., filed the following opinion:

The plaintiff in this action sought to recover from defendants damages for alleged false representations made

at the time of the purchase by plaintiff from defendants of certain shares of stock. The facts as shown by the testimony at the trial were substantially as follows:

In 1903 defendants with J. Ledly Gloninger and Frederick H. Boyles acquired the entire capital stock of the Liberty Land Company, a corporation of Pennsylvania, consisting of two thousand shares of the par value of $50.00 each. Subsequently James A. Huston, one of the defendants, entered into a contract with the Union Company, also a corporation of Pennsylvania, to purchase from it a tract of land containing approximately 2,500 acres, in Harmony Township, Beaver County, Pa., and Leet Township, Allegheny County, Pa. The capital stock of the Liberty Land Company was thereupon increased from $100,000.00 to $2,500,000.00; and in consideration of James A. Huston selling and transferring to the Liberty Land Company the property acquired by him from the Union Company there were delivered to him $2,500,000 in bonds of the Liberty Company, secured by a mortgage on the property, and also shares of the capital stock of the Liberty Land Company to the amount of $2,400,000.00, the same being full paid and nonassessable. Subsequently the other defendants together with J. Ledly Gloninger and Frederick H. Boyles became associated with James A. Huston as stockholders of the Liberty Land Company. J. Ledly Gloninger and Frederick H. Boyles died in the year 1904, and their stock in the Liberty Land Company was purchased by defendants in the early part of the year, 1905, the sum of $50,000.00 being paid each estate for the stock, the aggregate sum paid both estates being $100,000.00 was contributed in the following proportions:

| | |
|---|---|
| James A. Huston | $33,333.33 |
| D. P. Black | 33,333.33 |
| James N. Jarvis | 16,666.67 |
| William S. Van Dyke | 16,666.67 |

For that sum the defendants acquired 19,200 shares of the capital stock of the Liberty Land Company and

400 shares of the capital stock of the Fort Pitt Improvement Company. The stockholders of the Liberty Land Company, intending to offer the stock of the company for sale, had prepared a typewritten prospectus in which it was represented that the company owned 2,364.38 acres on the Ohio river in Harmony Township and Economy Township, Beaver County, adjoining Ambridge and Economy, generally known as the Economite lands, and also 20.417 acres in Leet Township, Allegheny County. The prospectus also represented the land to be suitable for manufacturing purposes, and that part of it was then ready for subdivision. The assets of the company, and also its liabilities, were set forth in the prospectus. The company and its property were brought to the attention of plaintiff, who after an examination of the prospectus and visiting the property, purchased 5,000 shares of the capital stock, paying therefor $30.00 per share. After becoming a stockholder in the company, plaintiff in the year 1906 was elected a member of the board of directors of the company and continued to serve as such until the year 1910, when he resigned. Unsuccessful efforts during this time were made to dispose of the property, and the stockholders were required to advance money to pay the taxes assessed upon it. In the year 1908, plaintiff says, he first learned that there was an encumbrance on 1,200 acres, or approximately half the land owned by the company, in the shape of an oil and gas lease held by P. M. Shannon. This lease was not mentioned in the prospectus of the company shown to plaintiff at the time he purchased the stock of the company. At the trial plaintiff's contention was that failure to inform him of the Shannon oil and gas lease, and failure to advise him that defendants had purchased the Gloninger and Boyles stocks at $5.00 per share was misleading to him, and if he had known these facts he would have refused to become a stockholder. In 1910 plaintiff returned his stock to defendants, which

was not accepted by them, and subsequently brought this suit to recover the amount paid by him for the stock.

After hearing plaintiff's testimony defendants' motion for a compulsory nonsuit was sustained, and this motion followed. Plaintiff based his right to recover on two grounds, (1) that defendants withheld from him the existence of an oil and gas lease upon approximately one-half of the land owned by the Liberty Land Company, and (2) defendants' failure to disclose to plaintiff the price at which they purchased the stock of the Gloninger and Boyles estates. At the time plaintiff first considered the purchase of stock in the Liberty Land Company a typewritten prospectus of the company, which had been prepared for showing prospective purchasers of stock, was shown to him and a copy given him. The prospectus set forth fully and truthfully the number of acres of land owned by the company, the amounts of its capital stock and indebtedness, together with a statement of its assets and liabilities, except that no reference was made to the outstanding oil and gas lease. The prospectus also contained the statement that the land was worth undeveloped between four and five thousand dollars per acre, and "as a developed proposition will subdivide and sell at from six to eight thousand dollars per acre." Before purchasing plaintiff, in addition to examining the prospectus, visited the property in company with one of the defendants and drove over it. As to what the property was worth developed and undeveloped was a matter of opinion, and whether the prices fixed in the prospectus were extravagant plaintiff had ample opportunity to determine. He was not bound to accept defendants' figures. As to the oil and gas lease, while there is no evidence tending to show that the lease was omitted from the prospectus for the purpose of misleading prospective purchasers of the stock, the fact that oil and gas was being produced upon the property was apparent to every person. At the time plaintiff first visited the property there were betwen 40 and 50 wells in

operation, and from 20 to 30 derricks on the land. Besides these there were tanks at various locations, connected with the wells by pipe lines which were generally exposed. That plaintiff saw these wells and pipe lines and tanks upon his several visits to the property cannot be doubted. They were notice to him that oil and gas were being produced from the land; and as he was a director in the company from 1906 to 1910, attended meetings and heard reports of the financial condition of the company read from time to time in which no mention of revenue from oil and gas was made, he certainly must have known that the Liberty Land Company was not operating the wells. Having seen the wells and their appliances when he first visited the property, and upon other occasions, and having knowledge of the fact that they were being operated continuously, plaintiff cannot now be permitted to say that his first knowledge of the oil lease was in July, 1908, when he met the lessee on a train coming from Buffalo, and that he would not have purchased the stock had he known of the oil and gas lease. Even if his first information of the lease was obtained in July, 1908, he made no effort to rescind his contract until almost two years later which in our opinion was an unnecessary delay.

Defendants undoubtedly had the right to purchase the Boyles and Gloninger shares and afterwards sell them at whatever price they saw fit. We have not been convinced that it was defendants' duty to inform plaintiff at what price they purchased the stock. They were dealing at arm's length. There was no such confidential relationship existing between the plaintiff and all the defendants as to require them to sell to him at cost. It was plaintiff's duty to investigate, and not purchase except upon terms he considered fair to himself. The shares purchased by plaintiff were part of 15,500 shares contributed by defendants to be sold for the benefit of the company and those shares were sold or disposed of for that purpose, and all money realized from the sale of those shares was used for the benefit of the com-

pany and not one dollar of it went to the defendants. While this fact of itself would not negative plaintiff's contention, it is a matter that should be considered with the other evidence, especially as fraudulent actions are alleged as a reason in support of plaintiff's claim for damages.  If misrepresentations were made to induce plaintiff to purchase the stock they were made by but one of the defendants, and by him without the knowledge or approval of the others.  All defendants were called as witnesses and fully cross-examined as to their knowledge of the sale to plaintiff, and my recollection is that at least two of them had no knowledge of plaintiff's intention of purchasing stock until the sale had been made. Giving full weight to all the testimony, plaintiff in our opinion has not shown a right to recover.

On motion of defendants the court entered a compulsory nonsuit, which it subsequently refused to take off. Plaintiff appealed.

*Error assigned,* among others, was in refusing to take off the nonsuit.

*S. S. Mehard,* with him *C. B. Mehard,* for appellant.

*Thomas Patterson,* of *Patterson, Crawford, Miller and Arensberg,* with him *Ww. A. Seifert, Samuel McClay* and *Reed, Smith, Shaw & Beal,* for appellees, cited: Densmore Oil Company v. Densmore, 64 Pa. 49; Calivada Colonization Company v. Hays, 119 Fed. Repr. 202; Carr v. Le Fevre, 27 Pa. 413; Fogg v. Blair, 139 U. S. 118;  Pearsoll v. Chaplin, 44 Pa. 9;  Deppen v. Light, 228 Pa. 79.

PER CURIAM, January 2, 1915:

The judgment is affirmed for the reasons stated in the opinion of the learned president judge of the Common Pleas, refusing to take off the nonsuit entered at the trial.