# First Nat. Bank of Donora, Appellant, *v.* Purcell.

*Promissory notes—Defense—Acceptance of substituted notes— Parol evidence—Contemporaneous agreement.*

1. In an action on a promissory note by a bank against the maker, a recovery can be had where it appears, from all the evidence in the case, that, although the bank, as alleged, may have agreed with the maker that it would accept in payment of the note in suit a note of a corporation then in process of formation, and in which the maker was interested, it was further agreed, as shown by defendant's own evidence, that such note of the corporation was to be a good bankable note, and that, at the time for the exchange of notes, the corporation was in fact insolvent.

Argued October 5, 1925. Appeal, No. 167, March T., 1925, by plaintiff, from judgment of C. P. Washington Co., May T., 1924, No. 237, on verdict for defendant, in case of First National Bank of Donora v. James M. Purcell. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Assumpsit on promissory note. Before CUMMINS, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was, inter alia, refusal of plaintiff's motion for judgment n. o. v., quoting record.

*Carl E. Gibson,* of *Vance & Gibson,* for appellant.— When testimony is offered to prove a contemporaneous parol agreement which is alleged to have induced the execution and delivery of the writing sought to be re-

formed, or such parol agreement is at variance with the writing, the terms of the parol agreement must be proved by clear, specific and indubitable evidence: Thompson v. Schoch, 254 Pa. 585; Ogden v. Traction Co., 202 Pa. 480; National Bank of Kennett Square v. Shaw, 218 Pa. 612.

Proof of a contemporaneous parol agreement is not admissible where its effect is to destroy the instrument itself: First National Bank of Hooversville v. Sagerson, 283 Pa. 406; First National Bank of Pittston v. Lawall, 280 Pa. 407; First National Bank of Greencastle v. Baer, 277 Pa. 184; Second National Bank of Reading v. Yeager, 268 Pa. 167; Gilmore v. Gilmore, 276 Pa. 333; Lebanon National Bank v. Long, 220 Pa. 556; Evans v. Edelstein, 276 Pa. 516.

The vice-president of a national bank has no authority to relieve the maker of a note, held by the bank, from liability, or bind the bank to accept payment of the note in other than cash or its equivalent: Hooversville Nat. Bank v. Sagerson, 283 Pa. 406; Mutual Trust Co. v. Stern, 235 Pa. 202; Stewart v. Bank, 11 S. & R. 267; Bank of U. S. v. Dunn, 31 U. S. 51; First Nat. Bank of Greencastle v. Baer, 277 Pa. 184; Cake v. Bank, 116 Pa. 264; Allen v. Bank, 127 Pa. 51.

*H. W. Hughes,* of *Hughes & Hughes,* with him *Warren S. Burchinal,* and *D. I. McAlister,* for appellee.— The existence of a contemporaneous parol agreement between the parties, under the influence of which a note or contract has been signed which is violated as soon as it has accomplished its purpose in securing the execution of the paper, may always be shown when the enforcement of the paper is attempted: Dixon v. Minogue, 276 Pa. 562; Humbert v. Meyers, 279 Pa. 171; First National Bank of Pittston v. Lawall, 280 Pa. 407; Dinch v. Workman, 84 Pa. Superior Ct. 39; Gandy v. Weckerly, 220 Pa. 285; Keller v. Cohen, 217 Pa. 522.

It is undisputed that defendant, the payee Castner and plaintiff were all parties to the original transaction and

the agreement being between the original parties (in fact) to the note, they could make any agreement as to the manner of payment they saw fit, and having made such agreement, neither party can be permitted to violate it: Faux v. Fitler, 223 Pa. 568.

Defendant contends that the bank has received the benefits of the parol contemporaneous agreement, and is now seeking to repudiate the parol understanding by means of which those benefits were received: Heckman's Est., 172 Pa. 185; Central Trust Co. v. Lappe, 216 Pa. 549, 552; Keough v. Leslie, 92 Pa. 424; Schultheis v. Sellers, 223 Pa. 513.

OPINION MR. JUSTICE SCHAFFER, November 23, 1925:

The plaintiff bank in this suit sought to recover from defendant the amount due on a promissory note for $15,-000, of which he was the maker. He successfully contended in the court below that he was not liable on his unqualified written obligation to pay because of an understanding with the vice-president of the bank that there should be substituted, in discharge of the note in question, the note of a corporation then in process of being formed, of which plaintiff was an incorporator. One presenting such a defense carries a heavy burden: First National Bank of Hooversville v. Sagerson, 283 Pa. 406. The real issue in the case would seem to have been lost sight of by the court below; it appears to have been obscured by irrelevancies.

There is no question but that the note when signed was a valid binding obligation against the defendant, nor is it gainsaid that he and his associates, two of whom endorsed the note, received from the coffers of the bank the $15,000 which they undertook to repay to it on demand, nor is it denied that instead of paying it with money appellee seeks and was permitted to discharge it by a worthless piece of paper to be made by an insolvent corporation as a result of testimony given by him and one of the endorsers that they were induced to execute

the note, the proceeds of which went for their benefit, because of an understanding with an official of the bank (denied by him as they stated it) that at some future time the bank would receive the note of a corporation not then in esse in lieu of and discharge from the obligation which admittedly they had incurred.

The outstanding relevant facts are these: Defendant and three others, Castner, O'Donnell and Woodward, had arranged to incorporate the Woodward Motor Company. Before they received their charter it became essential for them to obtain the sum of $15,000 in order that they might complete the acquirement of certain automobile agencies for their enterprise. Castner, sometime in the month of April, 1920, applied to the plaintiff bank for a loan to the Motor Company of the amount named. It was subsequently, on May 29, 1920, arranged that the bank would make the loan, the incorporation not having been completed, on a note signed by the defendant and endorsed by Castner and O'Donnell. On the day named, the date of the note, defendant and Castner called at the bank, met Binns, its vice-president, and executed the obligation. The proceeds thereof, $15,000, were by their direction placed to the credit of the Woodward Motor Company and checked out by the defendant, Purcell, as its treasurer, in payment for the automobile agencies. It is the contention of defendant that he is not liable on the note which he signed, because contemporaneous with its execution and as the inducing cause thereof, Binns, the vice-president of the bank, agreed to substitute for the note of the individual incorporators the note of the Woodward Motor Company after it received its charter, and, when such a note was tendered, the bank refused to accept it,—that by reason of the contemporaneous agreement his liability on the note ceased when the corporate note was tendered and refused.

As to this contemporaneous understanding, it is testified by Castner that the arrangement was that the note of the individuals was to be carried by the bank "as

security until a note was substituted made by the corporation" after it was incorporated and "in exchange" for the note in question.  He testified that when the note of the corporation was tendered to the bank, in pursuance of the understanding, it was refused.  He further said that he was induced to endorse the note by "the understanding and agreement that the corporation note would be substituted for the individual note" and without that agreement he would not have endorsed it.  On cross-examination, however, when he was asked whether there were any conditions attached to the granting of credit when he applied to the bank for the loan to the corporation, he replied "The conditions were that we were to organize our company and put it on a basis it would justify the granting of that loan of that amount," that a line of credit would be allowed the company "when those conditions were established," that they could not await the organization of the corporation to obtain the money and therefore used their individual note to get it. He further said that at the time the note was made, May 29, 1920, had the Woodward Motor Company then been incorporated its financial condition would have warranted its receiving a credit of $15,000, but when they came to make the exchange of notes, its financial condition was "not so good," that, when he told the vice-president of the bank that they were ready to make the exchange, the former asked him if he as a director of the bank (which he was) "Would consider it good business to exchange that note for the one which he held" and he (Castner) replied, "I would not," because the affairs of the company, of which he was president, were not prospering.  He also testified that it was not his understanding that whenever it was convenient for the company to do so they could substitute for their individual note the corporation's note, regardless of what its financial standing was, which latter statement is in direct conflict with the contention made by appellee, indeed with at least part of his testimony because he (appellee)

said that the understanding with the vice-president of the bank was that the individual note was only to be a temporary one "until we got a corporation note and Mr. Binns agreed to take the corporation note—that's why I signed that note," that without the arrangement as above stated he would not have signed it. When cross-examined defendant admitted, however, that he understood that the note of the corporation which the bank was to receive in lieu of his "had to be a good bankable note" and that when he was called upon by the bank to pay his note, the motor company was practically insolvent.

As testified to by Binns, the bank's vice-president, the understanding was, that before credit was to be extended to the motor company, it would submit a statement of its financial responsibility which would be satisfactory to the directors of the bank, that the loan in the first instance was made to the individuals, that their note "was to be paid by the Woodward Motor Company when they had established its credit with the bank and got its loan of like amount" and that there was no arrangement to substitute one note for the other. He further testified that no statement of the financial condition of the motor company was submitted to the bank and that the defendant and his associates did not show that they had ever put any money into the enterprise, that the collateral arrangement was all contingent on the defendant and those associated with him establishing the credit of the motor company and that at no time did the bank refuse to carry out the arrangement provided a satisfactory statement was presented. The defendant denied that there had been any understanding to furnish the financial statement.

We thus have a case in which it is set up as a defense by the maker of an admittedly valid note that he was to be permitted to discharge his obligation to the bank, to repay the money he borrowed from it, by giving it a worthless piece of paper made by an insolvent. Such a

defense cannot prevail in the teeth of the denial by the officer of the bank who conducted the transaction of the loan and the obligation to secure it (First National Bank of Hooversville v. Sagerson, supra); particularly is this so where, as here, the second witness upon whom defendant relies to establish his defense impugns it by the statement that the corporate note which was to be given was to be worthy of the credit asked and where he admits that the note of the corporation was not such an obligation, where he repudiates the understanding set up by defendant by stating that it was not his understanding that he and his co-obligors could substitute for their undertaking to return to the bank its money, the corporation's note, regardless of what the company's financial responsibility was at the time, and where all this is coupled with the admission from defendant himself that he understood that the note which the corporation was to give had to be a good bankable note.

The court below should have declared the attempted defense to be unavailing as a matter of law (First National Bank of Hooversville v. Sagerson, supra) and directed a verdict for plaintiff; a failure to do so was manifest error.

The judgment is reversed and is here entered for plaintiff; damages to be assessed in the court below.