## Purcell, Appellant, v. Binns.

448

Argued November 27, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*David I. McAlister,* of *Hughes & McAlister,* for appellant.—It is perfectly competent in an action involving fraud to prove other similar frauds, in order to show, in so far as possible, the intent and knowledge of the person accused of fraud: Kinzer v. Mitchell, 8 Pa. 64; Schnurman v. Hillegas, 276 Pa. 556; Righter v. Parry, 266 Pa. 373; Griswold v. Gebbie, 126 Pa. 353.

*Carl E. Gibson,* of *Vance & Gibson,* with him *Donnan & Miller* and *D. M. Anderson,* for appellee.—No fraud was committed: Bank v. Purcell, 284 Pa. 355.

There was no intention to defraud: Sutton v. Morgan, 158 Pa. 204; Nelson v. Steen, 192 Pa. 581; Deppen v. Light, 228 Pa. 79.

The statement complained of is at most a promise; there does not purport to be any statement of an existing

fact: Miller v. Fulmer, 25 Pa. Superior Ct. 106; Cox v. Highley, 100 Pa. 249; Hexter v. Bast, 125 Pa. 52; Grove v. Hodges, 55 Pa. 504.

In numerous recent cases this court has held that an independent contract or promise to do something in the future or to accept payment in a particular form, although not later carried out or performed, is not a legal fraud: Fuller v. Law, 207 Pa. 101, 104; Lowry Nat. Bank v. Hazard, 223 Pa. 520, 523; Hooversville Bank v. Sagerson, 283 Pa. 406, 411; Humphrey v. Brown, 291 Pa. 58; Clapp v. Hunt, 276 Pa. 127.

OPINION BY MR. JUSTICE FRAZER, January 6, 1930:

Plaintiff sued in trespass for fraud and deceit in connection with the execution and delivery by plaintiff of a note for $15,000 to the First National Bank of Donora, of which defendant was vice-president, the action being based on an alleged misrepresentation by defendant as to the ownership of a Dodge automobile agency by the Ridgely Motor Co. of which defendant was president and also on a promise by defendant, made when the note was given to the bank by plaintiff, that, upon the incorporation of the Woodward Motor Co., which was being organized by plaintiff and others for the purpose of taking over the business of the Ridgely Motor Co., the bank would accept the note of the Woodward Co. in exchange for plaintiff's note. The bank subsequently refused to accept the new note, and thereafter sued plaintiff on his note and recovered a judgment for the full amount with interest (284 Pa. 355), whereupon plaintiff instituted this action against defendant to recover damages measured by the amount of that judgment. The court below sustained a statutory demurrer to plaintiff's claim as to the alleged misrepresentations concerning the Dodge agency, on the ground that, even if proved, it appeared the right of action was in another and not in plaintiff, and at the trial of the case further charged the jury that the Woodward Motor Co. did in fact receive the benefit

of the Dodge agency in accordance with their contract, and the only issue of fact submitted to the jury was whether, on May 29, 1920, defendant fraudulently misrepresented to plaintiff that the bank would be willing to accept the corporation note in exchange for plaintiff's note. The jury found for plaintiff, assessing damages at $15,000, with interest from the date judgment had been obtained against plaintiff in the previous action by the bank; the court below however subsequently entered judgment non obstante veredicto for defendant with a provision that, in the event such judgment should not be upheld, a rule by defendant for a new trial should become absolute.

It appears that in 1920 plaintiff, acting with James P. Castner and others, organized a corporation known as the Woodward Motor Corporation. Pending completion of the organization, A. J. O'Donnell, acting for himself and the others, entered into a contract with the Ridgely Motor Co. which had been engaged in business in Donora, Pa., to purchase all assets of that company. To finance this transaction, the Woodward Motor Corporation planned to borrow part of the money, but its charter not having been received, the proposed corporation was unable to give a valid corporate obligation. Castner, who, was to be president of the new Woodward Motor Co., acting for himself and the others, called at the First National Bank of Donora, of which defendant was vice-president, and Castner a director, and made application to the board of directors of the bank for the granting to the Woodward Motor Corporation, when chartered, a line of credit to the amount of $15,000, representing at that time that the corporation would have a paid in capital of $50,000, that it would borrow $30,000 —$15,000 at the Union Trust Co. of Donora, the other $15,000 being the subject-matter of the application. The application was approved, subject to the completion of the organization of the Woodward Motor Corporation in accordance with the plans outlined by Castner. Pay-

ments accrued on the contract of purchase from the Ridgely Motor Co. before the organization of the Woodward Motor Co. was completed, and plaintiff and Castner visited the First National Bank on May 29, 1920, informed defendant that their charter had not been received, and that it was necessary to raise $15,000 to meet a payment, and asked for a temporary loan until the loan to be made to the corporation would be available. It was accordingly arranged that the money should be advanced on the personal note of plaintiff, endorsed by Castner and O'Donnell. It is upon the statements made by defendant at this interview that plaintiff relies for recovery. While there is conflict as to what was said by defendant, the testimony of plaintiff is that he made an unconditional promise that as soon as the charter of the Woodward Motor Co. was received he would substitute the company's note for the one which plaintiff had signed. The testimony of Castner, called on behalf of plaintiff, is that defendant agreed to replace the note of plaintiff by one of the corporation "when we had completed our organization and purchased the assets of the company, organized and in shape that we were to be in when we applied for the loan" and "as we had agreed at the time we applied for the loan." This is in accord with the testimony of defendant to the effect that the note could be paid by substituting the note of the new corporation, "just as soon as they were able to incorporate and give a note in accordance with the agreement." Whatever the exact words may have been, it is apparent that all parties had in mind the previous application made to the board of directors and the line of credit which they had agreed to grant when the conditions were complied with, and the sole purpose of the temporary personal loan was to procure necessary funds pending the time such credit would be available. When the Woodward Motor Corporation was ready to give its note in substitution for the note of plaintiff it appeared that it did not have its financial affairs in the condition re-

quired under the original arrangement with the bank. Instead of having $50,000 paid in it had only $40,000, and had borrowed $30,000 instead of $15,000 from the Union Trust Co. Defendant asked Castner at the time whether he thought it would be good business for the bank to accept the corporation note under the circumstances, to which Castner replied in the negative. The corporation never did, in fact, comply with the conditions, and finally became insolvent, whereupon the bank brought suit on plaintiff's note and recovered judgment for the full amount, as stated above. The basis of the opinion of this court in that case was that although the bank, through its agent, the present defendant, agreed with the maker that it would accept in payment of the note in suit the note of the corporation when formed, such agreement was conditional upon the substituted note being a good bankable obligation, and that the motor company never complied with that condition but had become insolvent. The rule is that a misrepresentation, to be the basis of an action for deceit, must be a misrepresentation of an existing fact, and not a breach of a mere promise to do something in the future: Fuller v. Law, 207 Pa. 101, 104; Clapp v. Hunt, 276 Pa. 127, 130; Humphrey v. Brown, 291 Pa. 53, 58.

Plaintiff's theory is that the statement of defendant, though a promise to do something in the future, amounted, under the particular circumstances, to a fraudulent misrepresentation of a present intention, and consequently was a statement of fact which could properly form the basis of an action for deceit, and in support of this he relies on statements in the opinion of the court in Standard Elevator Co. v. Wilson, 218 Pa. 280, 285. We deem it unnecessary to discuss the question, because, if a fraudulent intention is to be established, it must at least be proved by proper evidence. There is no evidence in this case from which it can be inferred that defendant had any dishonest intention in his mind when he accepted plaintiff's note. The giving of the note was

 453

merely a part to an end, the result of the earlier agreement for making a loan to the corporation. Plaintiff, as well as defendant, knew the conditions attached, and these conditions were necessarily implied as part of the agreement whereby the personal obligation of plaintiff was temporarily substituted. If not, the burden was on plaintiff to prove a waiver of such condition, and we find no such proof in the record.nor anything to show that defendant led plaintiff to believe the bank intended such waiver. Plaintiff, as an officer of the Woodward Motor Co. was as familiar with its affairs as defendant, and had equal knowledge or means of knowledge of its failure to comply with the conditions under which the bank would grant the loan. The failure of defendant to secure acceptance of the company's note was, under the evidence, the direct result of the subsequent default of the company of which plaintiff was an officer, and plaintiff's loss, for which he was responsible with others, was due to that cause, rather than to misrepresentations made to him by defendant.

The judgment is affirmed.