## Kelly, Appellant, *v.* Thomas.

*Corporations—Suit by stockholders against officers—Parties— Corporation as party—Fraud—Foreign corporation—Multifariousness.*

1. On a bill in equity filed by a stockholder of a corporation against certain of the officers and directors of the company, to compel an accounting and payment to the plaintiff for moneys which should have accrued to the corporation but for the fraudulent acts of the defendants, the presence of the corporation as a party to the record is indispensable to the maintenance of the action.

2. Where a foreign corporation has no property and does not conduct its business in this state, a court of equity in Pennsylvania has no jurisdiction over a bill filed by a stockholder on behalf of the company against certain of the officers and directors of the company to compel an accounting for moneys alleged to have been fraudulently taken from the company. Such a bill concerns the management of the internal affairs of a foreign corporation over which the courts of this state have no jurisdiction; nor in such a suit can the Pennsylvania court review a judgment entered against the company in the state of its domicile on general allegations that the judgment was entered through the fraud and collusion of the officers of the corporation.

3. A bill in equity is multifarious which is brought by a stockholder on behalf of the corporation against certain of its directors and officers for an accounting for moneys of which the company had been fraudulently deprived, and also for an accounting against another company for moneys obtained by sales which should have been made through the corporation, and also to recover from the other company and the directors of the corporation a loss sustained by the plaintiff by reason of a depreciation in the value of his stock.

Argued Nov. 1, 1911. Appeal, No. 237, Oct. T., 1911, by plaintiff from decree of C. P. No. 4, Allegheny Co., Second Term, 1910, No. 348, dismissing bill in equity

in case of William J. Kelly v. George W. Thomas, Martha A. Friend et al., Executors of the Estate of James W. Friend, deceased, F. N. Hoffstott, C. Jutte & Company, a Pennsylvania corporation, and Mississippi River Coaling Company, a Louisiana corporation. Before FELL, C. J., BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.  Affirmed.

Bill in equity for an accounting and payment to the plaintiff of all moneys due from sales of coal made by certain of the defendants which should have accrued to the benefit of the Mississippi River Coaling Company, and of the moneys which should have been derived from coal that could and would have been sold by said Company but for the alleged fraudulent and unlawful acts of the defendants; further, to compensate the plaintiff for the depreciation in the value of his stock in the said Company, alleged to have been wholly destroyed by the acts or omissions of the defendants.

On demurrer, Swearingen, P. J., filed an opinion dismissing the bill, from which the following material excerpts are taken:

"The bill was filed by William J. Kelly, of New Orleans, Louisiana, against George W. Thomas, of Pittsburgh, Pennsylvania; Albert G. Thomas, of New Orleans; Martha A. Friend, Charles W. Friend and Theodore W. Friend, executors of the will of James W. Friend, deceased, of Pittsburgh, Pennsylvania; F. N. Hoffstott, of either Pittsburgh or New York; C. Jutte & Company, a corporation existing under the laws of Pennsylvania; and the Mississippi Coaling Company, a corporation existing under the laws of Louisiana."

"The complainant averred that he had made no demand upon the officers or directors of the Mississippi River Coaling Company to bring suit, for the reason that they were charged with a misfeasance set out in the bill, and that therefore such demand would have been useless.  He also averred that his bill was brought

in his own behalf and on behalf of any other stockholder who might desire to join."

"The said executors of the will of James W. Friend, George W. Thomas and C. Jutte & Company, have appeared. None of the other defendants named have appeared, and the record does not show that service was had upon any of them. The individual defendants who have appeared, have demurred to the whole bill . . . . . therefore the averments of the bill, which are well pleaded, are to be taken as true."

"The important averments are these: The complainant is the owner of forty-eight per cent. of the capital stock of the Mississippi River Coaling Company, and C. Jutte & Co. is the owner of forty-one per cent. thereof, less four shares assigned to several persons to qualify them as directors. August 13, 1904, the complainant and C. Jutte & Co. entered into a written contract whereby they agreed that a corporation should be formed under the laws of Louisiana, with a capital stock of $100,000, for which the complainant and his associates were to subscribe, and the object of which was to build docks at the mouth of Lake Borgue Canal, in order to handle and store coal for the purpose of coaling steamers, supplying bunker coal and loading cargo or bunker coal for export; that complainant was to transfer to said corporation a lease of certain property for its purposes; that C. Jutte & Company was to loan the corporation $40,000 upon its notes to be secured by the stock, as soon as the complainant had obtained a contract for C. Jutte & Co. to supply the Elder-Dempster Steamship Company with coal and had produced reasonable assurance in writing that C. Jutte & Co. was to obtain like contracts from other lines; that the Dock Company was to handle no coal except that of C. Jutte & Co., and all contracts were to be made in the latter's name, and that the compensation of the Dock Company was to be all in excess of $2.85 per net ton, but it was not required to handle coal at a compensa-

tion of less than thirty cents per ton.  Pursuant to said contract, a corporation of the State of Louisiana was formed and was named Mississippi River Coaling Company, with a capital stock of $100,000, which was subscribed by complainant and his associates.  It was organized with a board of five directors.  Complainant turned over to said corporation the lease, as he was required to do, for which he received $99,600 of said stock.  He transferred to C. Jutte & Co. $52,000 of said stock, obtained a contract with Elder-Dempster Steamship Co. and assurances from other companies, and in all respects fulfilled his obligations under the contract. C. Jutte & Co. loaned the sum of $40,000 to the Dock Company and received the notes therefor and the collateral; and the coal tipple and docks were erected. Said George W. Thomas became president of the said Dock Company, his son, Albert G. Thomas, secretary and treasurer, and J. W. Friend a director.  Complainant was also a director.  Said George W. Thomas and James W. Friend were also controlling officers and directors in, and the principal owners of, the stock of C. Jutte and Company."

"It was averred that the defendants, who controlled both corporations and had a large interest in C. Jutte & Co., fraudulently failed to enforce said contract in favor of the Dock Company and against C. Jutte & Co., and fraudulently violated the same for the benefit of C. Jutte & Co.; that instead of selling coal through the Dock Company, C. Jutte & Co. sold coal directly to said Steamship Companies and deprived the Dock Company of the large profits it would have made; that C. Jutte & Co. neglected to obtain other large and valuable contracts for the benefit of the Dock Company, and that said officers and directors permitted the coal tipple of the Dock Company to become out of repair and allow washes to occur under its foundations, which could have been prevented at small expense.  It was also averred that, on January 31, 1907, C. Jutte & Co. brought suit

against said Dock Company in the United States Circuit Court for the Eastern District of Louisiana and service was had upon Albert G. Thomas, its secretary and treasurer, who was employed by and interested in C. Jutte & Co., said suit having been kept secret from the complainant; that on July 5, 1907, judgment was rendered in favor of C. Jutte & Co. and against said Mississippi River Coaling Company in the sum of $70,-489.95, with interest on $65,163.89 from January 1, 1907; and that the said claim was "wrongfully and fraudulently excessive," and was "inflated and so made excessive as one of the means of depriving the Coaling Company of its property." Execution was afterwards issued on said judgment and the property of the Dock Company was sold to officers and directors of C. Jutte & Co. for the sum of $18,000, it being of the value of at least $125,000. The complainant finally averred that his stock in the Dock Company, which was worth $50,000 had been rendered worthless by reason of said acts of the officers and directors and controlling stockholders therein."

"He prayed that the defendants be required to answer; that they be required to account for the sum 'that may be due your orator' from sales of coal which have been made and would have been made by the Dock Company and for the amount due 'from the defendants to your orator,' by reason of the violation of said contract; and that the 'defendants be required to pay the plaintiff' the amount found to be due. There was no prayer for any relief in favor of the Mississippi River Coaling Company......."

"The bill shows that, whilst the original contract was between the complainant and C. Jutte & Co., one of the covenants was that a corporation was to be formed, and thereafter the dealings of C. Jutte & Co. were to be with that corporation; that such corporation was formed; and that both the complainant and C. Jutte & Co. have performed their initial obligations to it. In fact, there

is no averment in the bill that any covenant with C. Jutte & Co. made with the complainant personally has been broken. Nor is there any averment that any of the defendants violated any contract made with him directly or committed any breach of duty which they owed to him as an individual. On the contrary, the averments are, that C. Jutte & Co. subsequently broke the covenants it made with the Mississippi River Coaling Company—covenants found in the original contracts, it is true, but none the less made with the Dock Company —and that some of the defendants disregarded their duty to the Dock Company, not to the plaintiff, arising out of their fiduciary relations to it. It is charged that C. Jutte & Co., by some of the defendants, did not sell coal through the Dock Company; that it allowed the property of the Dock Company to depreciate; that it failed to secure other valuable contracts for the Dock Company.....Finally, complainant alleged that the defendant caused an excessive judgment to be entered against the Dock Company and its property to be sold. ....The bill avers that judgment was obtained in the United States Court, and upon that judgment the property of the Dock Company was sold."

The Court determined that the "judgment was rendered in a Court of competent jurisdiction. It was the duty of that Court to determine, and it necessarily did determine, that the Dock Company was lawfully served with process, and was lawfully in Court. Its judgment must be taken as a verity....;" and further, that the Mississippi River Coaling Company was an indispensable party to the bill and no decree could be entered in its absence; that the bill was in effect an attempt to have the Court interfere in the internal affairs of that company, and, since its domicile was elsewhere and it had no property in this State, to grant the relief prayed for would involve an interference in the internal affairs of a foreign corporation; that as against the demurrants the plaintiff was seeking relief solely in the capacity of

a stockholder in the Coaling Company for wrongs done to that corporation, and that he had not shown a right to so proceed.

The demurrer was sustained and the bill dismissed at the cost of the complainant.

*Errors assigned* were in sustaining demurrer upon the grounds indicated in the opinion of the Supreme Court, and dismissing the bill.

*Ernest Dale Owen,* with him *Wm. M. Galbraith* and *Oliver K. Eaton,* for appellant.—The court had jurisdiction: Madden v. Electric Light Co., 181 Pa. 617; North State Copper & Gold Mining Co. v. Field, 64 Md. 151 (20 Atl. Repr. 1039); Babcock v. Farwell, 245 Ill. 14 (91 N. E. Repr. 683); McCloskey v. Snowden, 212 Pa. 249; Schmitz v. Metallic Condense Co., 11 Pa. D. R. 442; Neal v. Teel Mining Co., 51 Pittsburgh Legal Journal 233; Fisk v. R. R. Co., 53 Barbour 513; Watkins v. Land & Timber Co., 107 La. 107 (31 So. Repr. 683); Fougeray v. Cord, 50 N. J. Eq. 185 (24 Atl. Repr. 499); Hanley v. Balch, 94 Mich. 315 (53 N. W. Repr. 954); Brown v. De Young, 167 Ill. 549 (47 N. E. Atl. Repr. 863); Eaton v. Robinson, 19 R. I. 146 (31 Atl. Repr. 1058; 32 Atl. Repr. 339); Vose v. Grant, 15 Mass. 505; Wineburgh v. U. S. Steam & St. Ry. Adv. Co., 173 Mass. 60 (53 N. E. Repr. 145); Richardson v. Clinton Wall Paper Trunk Mfg. Co., 181 Mass. 580 (164 N. E. Repr. 400); Miller v. Quincey, 179 N. Y. 294 (72 N. E. Repr. 116).

*Robert J. Dodds,* with him *William M. Robinson* and *Reed, Smith, Shaw & Beal,* for appellees.—The gravamen of the bill of complaint, so far as respects this demurrant, concerns entirely the internal affairs of a foreign corporation, and therefore this court will take no jurisdiction of this cause: Madden v. Electric Light Co., 181 Pa. 617; McCloskey v. Snowden, 212 Pa. 249. The

bill of complaint shows no right in plaintiff to maintain the action: McMullen v. Ritchie, 64 Fed. Repr. 253; Wolf v. R. R. Co., 195 Pa. 91.

The presence of the Mississippi River Coaling Company is indispensable to the maintenance of this action and it not appearing that said corporation is within the jurisdiction of this court or subject to its process, this court will not entertain jurisdiction of this cause: Eldred v. Palace Car Co., 105 Fed. Repr. 455.

The bill is multifarious as respects both the parties thereto, and the subject-matter thereof.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2, 1912:

The material facts in this case fully appear in the opinion of the court below published in connection herewith. The plaintiff alleged that the defendants, as officers of the Mississippi River Coaling Company (referred to by the court below as the "Dock Company") had refused to enforce certain contracts against another corporation known as C. Jutte & Co., in which they were interested as stockholders and officers; that they had neglected to secure other valuable contracts for the Coaling Company; that they had failed to keep the property of said company in repair and had permitted it to be sold for an inadequate price under a judgment secured by C. Jutte & Co. through fraudulent collusion with them. These facts, if established, would constitute breaches of the defendants' duties to the Coaling Company, for which they would be directly liable to that corporation—not to its stockholders.

The plaintiff avers in his bill that "No demand has been made upon the officers and directors of the Mississippi River Coaling Company to bring or conduct this suit, for the reason that the same is brought against them, charging them with the misfeasance herein set out, and that such demand would therefore have been useless." It appears, however, that of the seven officers

and directors of the Coaling Company only three are named as defendants in this proceeding and the appellant expressly admits that he has no case against Albert G. Thomas, one of the three. He does not aver in detail specific acts done by any of the defendants showing fraudulent collusion, but contents himself with general allegations of fraud based upon the averment "That the principal and controlling officers and directors of said Coaling Company, especially G. W. Thomas and J. F. Friend, and not including your orator, were also the controlling officers and directors, and the principal owners of the stock of the said C. Jutte & Co., and had a larger and greater interest in said C. Jutte & Co. than they had in said Coaling Company."

In Wolf v. Railroad Co., 195 Pa. 91, 95, the plaintiff charged collusion on the part of the directors of a corporation, and we said, "The averments of collusion relied on by the plaintiff are that as the lessee is the owner of a majority of the shares of the lessor, the former elects and controls the acts of the officers of the latter. * * * * The defect of this charge is that it does not rest on any facts averred, but on an inference that by reason of the circumstances of their election, the directors will violate their duty and commit a breach of trust. There is no presumption that officers will commit a breach of trust; the charge should rest on some act, affirmative or permissive, manifestly in violation of duty, and manifestly the result of fraud and not of erroneous judgment." Fraud is largely a conclusion of law, and all our cases agree that general allegations which do not set forth the particular circumstances are not sufficient. Where it satisfactorily appears that a demand upon the officers of a corporation would be useless, such a course need not be pursued; but here the plaintiff has not made it plain from facts stated that a majority of the Board of Directors of the corporation in question had been, or probably would have been, faithless to their trust; hence he has not shown a right to maintain the suit in his in-

dividual capacity. We have held, "The right of an individual stockholder to act for the corporation is exceptional and only arises on a clear showing of special circumstances, among which inability or unwillingness of the corporation itself, demand upon the regular corporate management, and refusal to act are imperative requisites. A refusal by the corporate management must appear affirmatively to be a disregard of duty and not an error of judgment, a nonperformance of a manifest official obligation, amounting to a breach of trust. There must be averred and proved an actual application to the directors, and refusal by them to bring suit or to allow plaintiff to do so in the corporate name, and where misconduct of the directors themselves is alleged, the bill must show an effort to secure plaintiff's rights through meetings of the corporation:" Wolf v. Railroad Company, 195 Pa. 91, 94; McCloskey v. Snowden, 212 Pa. 249. A shareholder has no distinct and individual title to the moneys and property of a corporation: Bidwell v. Railway Co., 114 Pa. 535, 541. In McMullen v. Ritchie, 64 Fed. Repr. 253, 262, Mr. Justice Lurton, then a U. S. Circuit Judge, stated, "The injury done by the defendants, if any, was done to the corporation. The wrong, if objectionable, was one to be remedied by an action by the corporation, or by a shareholder for the benefit of the corporation upon the refusal of the corporation to sue. A stockholder cannot maintain a suit for the indirect injury done to him as an indirect result of an injury to the corporation. This is too obvious to need elaboration." These words are applicable to the present case.

While the Mississippi River Coaling Company was named as a defendant, it was never served and did not appear. The learned court below rightly decided that the presence of this corporation as a party to the record was indispensable to the maintenance of the action. The rights of the plaintiff depended upon those of the Coaling Company, and the latter was not before the

court. Not only was its presence necessary to the plaintiff, but the defendants were entitled thereto so that the corporation might be concluded by any decree entered against them, and the company itself was entitled to notice in order that its interests and the rights of its creditors might be protected. (See quotations from standard text-books upon this point in Willoughby v. Chicago Junction Rys. & Stockyards Co., 25 Alt. Repr., 277, 280, 281, and Eldred v. American Palace-Car Co., 105 Fed. Repr. 457, 458). There is nothing upon the record to show that it was impossible to secure service upon the individual defendants in the domicile of the foreign corporation; they were officers of that company, and in the absence of any averment to the contrary it is but reasonable to assume that they could have been served in the State in which that corporation had its being and transacted its business.

It appears from the bill that the dealings between Jutte & Co. and the Coaling Company were adjudicated in an action at law brought by the former against the latter in the year 1907, in the United States Circuit Court for the Eastern District of Louisiana, and that a judgment for a considerable sum was secured against the Coaling Company. The plaintiff sought to have the court below inquire into and practically set aside that judgment as fraudulent, upon the general averment that the suit was "kept wholly secret from your orator;" that the service was upon the secretary and treasurer of the Coaling Company who was the son of one of the other defendants and in the employ of Jutte & Co.; that the claim adjudicated was "wrongfully and fraudulently excessive"; that Jutte & Co. "had no proper legal cause of action against the said Mississippi River Coaling Company"; that the proceedings were "wrongful, fraudulent and oppressive, and the judgment in said suit was procured by deceit upon the court * * * and was part of the general wrongful and fraudulent scheme and design of the defendants * * * for the

purpose of preventing your orator from getting the benefit to which he was entitled as a stockholder of the said * * * Coaling Company." Had it been proper for the court below to review this judgment, it was not called upon to do so under these general averments. We are convinced that no error was committed in determining that, "it would be highly improper * * * under the averments of this bill, to undertake to ascertain whether or not the Dock Company was properly served with process and whether or not the judgment of that court was excessive in amount."

In the eyes of the law as laid down in this State the gravamen of the bill, so far as respects the demurrents, concerns the management of the internal affairs of a foreign corporation. As to this, we have said, "A Pennsylvania resident has no right to call upon the courts of his own State to protect him from the consequences of a voluntary membership in a foreign corporation. By the very act of membership he entrusted his money to the management of a corporation owing its existence to and governed by the laws of another State * * * * Without doubt, Courts of Equity in Pennsylvania, have * * * jurisdiction to enjoin unlawful acts by such corporations; * * * but they have no jurisdiction as to their internal management. What constitutes internal management is well defined by Stone, J., in North State Copper & Gold Mining Company v. Field, 64 Md. 151: 'Where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as a stockholder, director, president or other officer, and is the act of the corporation, whether acting in stockholder's meeting, or through its agents, the Board of Directors, then such action is the management of the internal affairs of the corporation; and in case of a foreign corporation our courts will not take jurisdiction.'" Madden v. Electric Light Co., 181 Pa. 617, 621-2. This was said in a case where the business and tangible property of the foreign corporation were

within our own State, and where stockholders charged the corporate management with conduct "which depreciated and rendered valueless their stock," and it was repeated under like circumstances in McCloskey v. Snowden, supra. The present corporation has no property and does not conduct its business in this State.

We have examined Sloan v. Clarkson, 105 Md. 171; Miller v. Quincey, 179 N. Y. 294; Babcock v. Farwell, 245 Ill. 14, State, ex rel. North American Land & Timber Co., 106 La. 621, Beale on Foreign Corporations Secs. 309-312, 3 Clark & Marshall on Private Corporations, Sec. 865, and the other cases cited by the appellants, and while some of these do not entirely agree with the Pennsylvania doctrine, it is to be noted that in each instance where other jurisdictions have taken a more liberal view than our own in reference to granting relief involving an inquiry into the management of the internal affairs of a foreign corporation, the business and property of the corporation affected were within the jurisdiction of the court. In view of the circumstances of the present case we do not feel that a departure from our own rule would be justifiable; but in a case free from the peculiar difficulties of this one, where the foreign corporation was served and all the parties or property directly involved was within the jurisdiction of the court, if the actual exercise of visitorial powers is not requisite to the relief, the rule as to non-interference should be restricted and not carried further than is absolutely required by universal fixed rules of law; for, where possible, we should prevent its use as a cloak to cover apparent fraudulent conduct on the part of officers of foreign corporations to the prejudice of Pennsylvania stockholders.

For the reasons already stated, the court could have done nought else than dismiss the plaintiff's case; but in addition, the demurrer raised the point that the bill was multifarious, and this also was well taken; for in effect it seeks to maintain, first, an action by the plain-

tiff as a stockholder of the Coaling Company on behalf of that Company to recover against certain of its directors and one of its stockholders for losses growing out of an alleged fraudulent and collusive management of its affairs; next, an action of the same character against C. Jutte & Co. to recover profits made by that concern on coal sold which should have been disposed of through the Coaling Company; lastly, an action by the plaintiff individually against the directors of the Coaling Company and C. Jutte & Co. to recover for the depreciation in the value of his stock in the former company.

The assignments of error are overruled and the decree of the court below is affirmed at the cost of the appellant.