## Klerlein, Appellant, v. Werner.

18

Argued January 12, 1932. Before FRAZER, C. J.,
SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*H. H. Krekstein,* of *Cohen, Schweidel & Krekstein,* for
appellant.—The court below was in error in holding as
a matter of law that defendant's representation as to the
book value and net worth of the corporate business was
an estimate, and not the representation of an existing
fact: Standard Interlock Elevator Co. v. Wilson, 218
Pa. 280; Fidelity-Phila. Trust Co. v. Simpson, 293 Pa.
577; Williams v. Kerr, 152 Pa. 560; Sutton v. Morgan,
158 Pa. 204; Gillespie v. Hunt, 276 Pa. 119; Cornelius
v. Molloy, 7 Pa. 293; Croyle v. Moses, 90 Pa. 250;
Rheem v. Wheel Co., 33 Pa. 358; Yeaney v. Keck, 183
Pa. 532; Edelman v. Latshaw, 180 Pa. 419.

Where the transaction complained of consists of a
sale, such representations or concealments of facts as
have a definite bearing on the value of the thing being
sold are material: Caldwell v. Trust Co., 291 Pa. 35.

It has been held that false statements as to the prop-
erty and financial standing of another with intent to de-
fraud are such material representations as to constitute
a basis for an action in deceit: Griswold v. Gebbie, 126
Pa. 353; Boyd's Exrs. v. Browne, 6 Pa. 310; Duff v.
Williams, 85 Pa. 490; Jamestown Iron & Metal Co. v.
Knofsky, 291 Pa. 60.

Where the plaintiff proves a representation, its falsity
in fact, and shows evidence of circumstances under

which the representations were made tending to show that it was a reckless assertion of a fact as to which the defendant has no knowledge, the case is for the jury to determine whether defendant honestly believed his representations to be true: Griswold v. Gebbie, 126 Pa. 353; Lamberton v. Dunham, 165 Pa. 129; Duff v. Williams, 85 Pa. 490; Dilworth v. Bradner, 85 Pa. 238.

It is not necessary to prove that defendant had any intention to cheat or defraud. The law will infer a wrong motive if what defendant said was false within his own knowledge and occasioned damage to plaintiff: Righter v. Parry, 266 Pa. 373; Huber v. Wilson, 23 Pa. 178; Boyd's Exrs. v. Browne, 6 Pa. 310.

Where defendant makes a representation of a fact peculiarly within his knowledge, the party to whom it is made has a right to rely on it, and is not bound to make inquiry: Hexter v. Bast, 125 Pa. 52; Anderson v. Snyder, 14 Pa. Superior Ct. 424; Cornelius v. Molloy, 7 Pa. 293.

The proper measure of damages suffered by one who is fraudulently induced to make a contract of sale or purchase is the difference between the actual value of that which is parted with and the actual value of that which he receives under the contract: Browning v. Rodman, 268 Pa. 575; Hoagland v. Mulford, 298 Pa. 588; Mullin v. Gano, 299 Pa. 251.

*Grover C. Ladner*, of *Ladner & Ladner*, for appellee.— No assertion of the value of goods nor any statement purporting to be a statement of the seller's opinion only, shall be construed as a warranty: Rockafellow v. Baker, 41 Pa. 319; Byrne v. Stewart, 124 Pa. 450; Peck v. Stevenson, 6 Pa. Superior Ct. 536; Wolford v. Wolford, 92 Pa. Superior Ct. 550.

The rule that a misrepresentation to be a basis for an action for deceit must be a misrepresentation of an existing fact and not a breach of a mere promise remains unaltered: Purcell v. Burns, 298 Pa. 447.

Plaintiff urges that the failure of Werner to impart information to plaintiff that he was negotiating for sale of the entire business amounts to a fraud and is in effect a misrepresentation giving plaintiff the right of cause of action. This is not the law: Scott v. Huston, 247 Pa. 536; Harrison v. Welsh, 295 Pa. 501.

OPINION BY MR. JUSTICE KEPHART, February 3, 1932:

Appellant sued in trespass to recover damages for fraudulent representation and deceit in the sale of stock. Appellant was the owner of 200 shares of stock in a rug and carpet concern, incorporated as the Fred Werner Co., Inc., which was 10% of the total authorized and issued capital stock of the corporation. He was also vice-president and director of that company. Appellee owned practically all of the remaining shares. When the company was organized some years before, appellant agreed in writing that, if at any time he wished to sell his stock, the other stockholders had the right to buy at a price to be agreed on, not to exceed book value. Appellee, who had been largely in charge of the business, had been negotiating with parties in New York for the sale of all the property. He notified appellant to call at the office that evening and bring his stock certificate with him. Appellant, evidently knowing that an offer would be made for his stock, consulted with his wife, and later appeared at the conference with his attorney from Baltimore. Appellee was likewise represented by counsel. What took place at this meeting forms the basis of the cause of action, and, as testified to by appellant, was as follows: "Werner stated that the net value of the business would not exceed over probably $225,000 and in liquidation it might be considerably less," and "that was his opinion of the value." He further testified that Werner told appellant's counsel "that would be the outside value, the net value of the business, the book value." The conference lasted from three to four hours. An offer of $20,000 was made for the stock, later in-

creased to $22,500. Both offers were refused and the matter referred to the attorneys, who in a side room apart from their clients took up the discussion, each bent on getting the best price possible. They finally settled on $25,000. Werner, after some arguing, agreed to the price, and it was paid the following morning. Nothing was said at any time by Werner of his negotiations in New York for the sale of the property.

Werner then completed his arrangements for a sale of the business to the New York buyers, a few days after his purchase of appellant's stock. No definite purchase price was named in the agreement, but a way was provided in which it could be determined. This was to be in accordance with the average price at which goods similar in quality were sold at an auction sale to be held a few days later in New York City, with a provision that if the price of any articles could not be determined at that auction, it would later be adjusted to the manufacturer's price of such goods. The terms of payment covered a period of months. An option of purchase was given as to real estate. The auction price of the merchandise sold, with other assets, according to appellant's claim, made his stock worth $38,000 when it was sold, and it is for the difference between this figure and what he received for his stock that this action was unsuccessfully prosecuted in the court below.

Before considering the evidence, it may be well to ascertain just what was included in Werner's agreement of sale with the New York parties and if all matters therein contracted for related to the value of the stock sold by appellant to Werner. Appellee not only sold all the physical chattels of the company, but, in addition to assuming all the risk of nonpayment by the vendees, he personally indemnified the purchaser against any and all claims that might be made against the company; more important, Werner agreed to withdraw absolutely from the rug and carpet business not only as an individual but in connection with this company for a period

of years, sufficiently long to deprive him of the benefit of any connection with former patrons or customers if he wished to resume it thereafter. This may have been a material item which the parties, or at least Werner, included in the sales price. Appellant does not attempt to place any value on any of these items as related to the purchase price, but appropriates them all to increase the value of his own holding. This value may have been considerable to a man operating a successful business, as Werner was doing. We might dismiss the appeal at this point for insufficiency of evidence to appraise with any accuracy the value of appellant's stock when sold to Werner, but, because of counsel's pressing argument, we shall consider the other questions.

It is not necessary to mention all the elements required to establish actionable fraud. The burden was on appellant to prove the existence of each of these elements. The court below found that he had failed to do this.

The statements forming the basis of appellant's action are expressions of opinions or estimates. They are not such statements as would ground an action of deceit. Section 12 of the Sales Act provides: "No assertion of the value of goods nor any statement purporting to be a statement of the seller's opinion only, shall be construed as a warranty." A mere false assertion of value when no warranty is intended is not grounds for relief, because the assertion is a matter of opinion. Especially is this true where the one supposed to rely on such statement has an equal opportunity to ascertain the facts on which such opinion might be based: Rockafellow v. Baker, 41 Pa. 319; Geddes's App., 80 Pa. 442; Rothermel v. Phillips, 292 Pa. 371, 377. The essential element in an action of deceit is that it must be a fact that is misrepresented, and not an expression of opinion. But appellee stated that his appraisement of value was his opinion and the words he uses are indicative of an estimate or opinion.

It is urged that appellee stated he wished to go out of business. The statement was correct. If, however, in addition to going out of business he had an opportunity to sell, he was not required to divulge this fact to the ✓ other stockholders. There is nothing in the relation of shareholders that would require such mutual interchange of information. Of course, one may not by some act amounting to fraud overreach another, but where both stand on equal footing they should be able to take care of themselves.

The principles in the cases referred to by appellant do not apply to the facts before us. The rule that a misrepresentation, to be the basis of an action for deceit, must be one of an existing fact and not a mere breach of a promise is unalterably established: Purcell v. Binns, 298 Pa. 447, and cases cited at page 452. All actions for deceit must necessarily depend on their particular facts as controlling. For instance, Geddes's App., supra, was a case where a partner seeking to purchase another partner's interest misled the selling partner into a belief that a former partner wanted to buy back an interest in the business, whereas in truth and fact the former partner was acting as straw man for the buying partner. The partner who sold, after discovery, claimed fraud and misrepresentation on the ground that it was the duty of the buyer to disclose for whom he was really acting. We held no such disclosure necessary. The partner had access to the books and could have examined them just as appellee could have done in this case. He could have had an expert accountant go over them as he did when this case came for trial.

Moreover, there is not sufficient proof that the representations were false. Appellant's certified accountant, in his effort to fix book value, when the sale of the stock took place, based his testimony on figures disclosed in the books, and on other figures not disclosed in the books or by an inventory of mechandise but by the price paid later by Armon according to the auction sale. Using

24

this figure, which included a value not attributable to or reflected in capital stock value, the accountant fixed the net worth of the company as of April 30, 1925, at $334,000, which would make appellant's stock worth $33,000. The actual inventory of the merchandise, as made by Werner at that time, was not put in evidence. Inventories are subject to depreciation depending on the length of time the stock in trade is held. Moreover, the inventory should have been made in April when the stock was sold. Then, too, even on this basis, the entire purchase price of the assets was not paid in cash, and, to determine appellant's stock value, the present worth of the future payments would have to be ascertained. The selling price was really some $311,000, as we understand it. This sum, discounted for two years, the approximate time over which payment was made, amounts to only some $275,000, which would reduce the value of plaintiff's shares at the time of sale to about $275 a share. Such a statement as here given cannot be considered as book value to render false appellee's statement. What the goods sold for after April 30, 1925, would not establish value on that date, nor would it be an inventory value, which is made up of other considerations than the price adjusted to an auction sale.

There was no credible evidence of book value of this company on April 30th when the stock was sold, and the court below did not commit error in rejecting it. Appellee never intimated in these statements that he had personally examined the books and made an inventory of the property. The language he uses conveys no such thought,—"They were not worth any more than $225,000 at the outside." Nor did this language convey the idea that appellant was to take his word for it. He knew appellant could examine the books and the inventory as well.

While laches might preclude the defrauded party from rescinding the contract induced by fraud, it would not affect his right of action for damages. He might bring

this action of deceit at any time within the period fixed by the statute of limitations (27 C. J. 26, section 139; Irwin v. Harris, 199 Pa. 405), and while this rule may be true, when equity is asked to rescind the contract, yet in a suit for breach when the acts of the parties are to be considered, courts will consider laches as an aid in determining what might be doubtful inferences from conduct. So, in interpreting the language used as testified to here, as a basis of this suit, if we were in doubt we would not hesitate, because of plaintiff's laches in waiting nineteen months, to construe such language most strongly against the action, and hold that the words used were a mere estimate of his idea of value, and under all the authorities an estimated value cannot be made the basis of such a misrepresentation of fact as will support an action of deceit.

Appellant as a stockholder and vice-president of the company was not forced to sell and did not actually sell until the following day; meanwhile he had ample opportunity to inspect the books to be informed as to the truth of Werner's statements, if he relied on them. As an officer of the company he had that right to be fully informed. The parties dealt at arms length, there was no trust relation or confidence between them (Scott v. Huston, 247 Pa. 536), and the rule as to the sales of chattels should apply.

Judgment of the court below is affirmed.