Moore et al., Appellants, *v.* Steinman Hardware Company.

Argued May 13, 1935.   Before SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*John E. Evans, Sr.,* of *Margiotti, Pugliese, Evans & Reid,* with him *Davies, Beebe, Busick & Richardson* and *Bard & Brown,* for appellants.

*F. Lyman Windolph,* of *Windolph & Mueller,* for appellee.

OPINION BY MR. JUSTICE DREW, June 29, 1935:

Plaintiff Amy Moore is the widow of Sylvester Z. Moore, and a coexecutor under his will, along with the Farmers Trust Company of Lancaster.   At his death on August 26, 1928, decedent owned 510 shares of the common stock of the defendant corporation, these shares representing 51% of the capital stock of that company.   On December 7, 1933, the widow filed a statement of claim, sounding in deceit, whereby she alleged that the president of the defendant company, a brother of decedent, had made fraudulent misrepresentations to her in procuring, in defendant's behalf, the sale to it of decedent's shares.   She further claimed that she was entitled to

half the resulting damages, in virtue of her election to take against the will.

The statement of claim was subsequently amended by the addition, as parties plaintiff, of the names of the widow and the Farmers Trust Company in their capacity as executors. Upon petition by defendant to require counsel to file a warrant of attorney from plaintiffs, a warrant from the widow alone was filed. Although no warrant from the corporate executor was produced, the court below permitted the use of its name as a party plaintiff. The question whether the court acted properly in allowing the use of the corporate executor's name is not now raised, and we therefore express no opinion with regard to it. Defendant having filed an affidavit of defense raising questions of law, judgment was finally entered in its favor, on two grounds: (1) there was a misjoinder of parties plaintiff; (2) the facts set out in the statement of claim were insufficient to support an action for deceit. A motion, thereafter made, to amend the caption by striking out the name of Amy Moore as an individual, and further to amend the statement of claim, was denied, and from the denial of that motion and the entry of judgment in defendant's favor this appeal was taken.

It is alleged in the statement of claim, as finally amended, that defendant's president, acting in defendant's behalf, approached Mrs. Moore, as one of the executors under her husband's will, with a proposition to purchase decedent's shares in the defendant company at the rate of $300 a share, and that in the course of the negotiations he fraudulently represented the shares to be "not worth more than he was offering," and further stated that unless the proposition were accepted the defendant company "would have to be dissolved at a great loss and sacrifice to all of the stockholders." On July 5, 1929, according to the statement of claim, Mrs. Moore and her coexecutor entered into an agreement in writing with defendant for the sale to the latter of the 510

shares, the agreed price being $210,240, or approximately $412 a share. The record discloses no point in the course of the litigation at which the corporate executor indicated a willingness to join in the prosecution of this suit. It may be noted that the action was brought more than four years after the sale of the stock.

The court below concluded that the representations alleged were such matters of opinion that they were not actionable under the circumstances. With this conclusion we are altogether in accord. Statements of value are but a part of the "trade talk" and bargaining which customarily accompany negotiations for the sale of property.[1] It has many times been pointed out that a buyer or seller is not entitled to rely on such statements where he has an equal opportunity to ascertain the facts affecting the value of the thing to be sold.[2] Decedent's stock was in fact sold to defendant for approximately $112 more per share than the price offered by its agent. The fact that the price ultimately agreed upon was over one-third more than the value as stated by the president indicates clearly that his statement was not relied on to any considerable extent, and that it was in truth regarded by plaintiffs as nothing more than trade talk.

Nor is there merit in the contention that plaintiffs did not have equal opportunity to discover the facts relating to the value of the shares. As owners of a majority of

[1] A legislative recognition that such is the case is suggested by the enactment of section 12 of the Uniform Sales Act of May 19, 1915, P. L. 543. That section provides in part that "no affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only, shall be construed as a warranty."

[2] Rockafellow v. Baker, 41 Pa. 319; Geddes's App., 80 Pa. 442; Rothermel v. Phillips, 292 Pa. 371; Klerlein v. Werner, 307 Pa. 16; Cote v. Christy, 10 Pa. Superior Ct. 318; Wolford v. Conway, 92 Pa. Superior Ct. 550; see also Byrne v. Stewart, 124 Pa. 450, 454; Mahaffey v. Ferguson, 156 Pa. 156, 169; Harrison v. Welsh, 295 Pa. 501, 508; Emery v. Third Nat. Bank, 308 Pa. 504, 511-12.

the shares they controlled the corporation, upon whose assets the value of the shares depended. Obviously the corporate books and records were available to them for the purpose of determining that value. In any case, their status as shareholders clearly entitled them to an examination of the books in order to determine the value of their shares in connection with the proposed sale: Neubert v. Armstrong Water Co., 211 Pa. 582; see Rochester v. Indiana County Gas Co., 246 Pa. 571. It is urged that Schondelmeyer v. Columbia Fireproofing Co., 219 Pa. 610, would bar inspection of the books in the present case. There, however, the shareholder sought an examination of the books in aid of an action for deceit which he had brought against the president of the corporation as an individual. Plainly, that case is not parallel to the case at bar. That a majority shareholder may inspect the books for the purpose of determining the value of his shares, which the corporation itself seeks to buy, cannot be doubted. Neubert v. Armstrong Water Co., supra, which supports plaintiffs' right of inspection, was not overruled by the Schondelmeyer case, as counsel suggest. In the motion after judgment, an amendment to the statement of claim was sought, alleging that the books of the company did not reflect the true value of its stock. Even if such was the case, it cannot be argued that the sources of information as to the true value were less accessible to plaintiffs than to defendant's president. At the time of the sale, plaintiffs, one of whom was a corporate fiduciary undoubtedly experienced in the management of corporate affairs, had owned the shares, and therefore been in control of the corporation, for over ten months. Under such circumstances, the argument that plaintiffs had no adequate opportunity to ascertain the facts affecting the value of the shares is not convincing.

It is contended that there was a "relation of trust and confidence" between plaintiffs and defendant's president, and that this relation prevents the case from fall-

ing within the ordinary rule as to statements of value. However, the mere fact that the negotiations were conducted with, and the statements made by, the president of the defendant company did not, in the absence of special circumstances, create a fiduciary or confidential relationship with regard to the sale of the stock (Klerlein v. Werner, 307 Pa. 16),[3] particularly when it is remembered that plaintiffs were majority shareholders and had been such for nearly a year. No special circumstances sufficient to create such a relationship are disclosed in the allegations of the statement of claim.

In Klerlein v. Werner, supra, the facts of which were in many respects like those in the instant case, plaintiff was the owner of 10% of the corporate stock, as well as an officer and director, and defendant, who had been largely in charge of the business, owned practically all of the remaining shares. During negotiations for the purchase of plaintiff's shares defendant stated that the net value of the corporate business was not more than $225,000. The shares were finally sold to defendant for

---

[3] It appears to be the general rule, supported by the decided weight of authority, that the fact that a purchaser of shares from an individual shareholder is an officer or director of the corporation whose shares he purchases does not of itself, in the absence of special circumstances, create a fiduciary relationship between them as to the sale of the stock: see Krumbhaar v. Griffiths, 151 Pa. 223; Percival v. Wright, [1902] 2 Ch. 421; Gillett v. Bowen, 23 Fed. 625, 626; Du Pont v. Du Pont, 242 Fed. 98, 136, 251 Fed. 937, affirmed 256 Fed. 129, certiorari denied 250 U. S. 642; Steinfeld v. Nielsen, 15 Ariz. 424, 444; Bacon v. Soule, 19 Cal. App. 428, 438; Hooker v. Midland Steel Co., 215 Ill. 444, 451; Comrs. of Tippecanoe County v. Reynolds, 44 Ind. 509, 513; Waller v. Hodge, 214 Ky. 705, 714; Blabon v. Hay, 269 Mass. 401, 407; Walsh v. Goulden, 130 Mich. 531, 539; Seitz v. Frey, 152 Minn. 170, 174; Crowell v. Jackson, 53 N. J. L. 656; Carpenter v. Danforth, 52 Barb. (N. Y.) 581; Shaw v. Cole Mfg. Co., 132 Tenn. 210; Haarstick v. Fox, 9 Utah 110, 120; Haverland v. Lane, 89 Wash. 557, 567. The argument usually made is that the officer's or director's duty is only to the corporate entity, not to the shareholder as an individual.

$25,000. In holding that defendant was not liable in deceit, we said: "The statements forming the basis of appellant's action are expressions of opinions or estimates. They are not such statements as would ground an action of deceit. . . . A mere false assertion of value when no warranty is intended is not grounds for relief, because the assertion is a matter of opinion. Especially is this true where the one supposed to rely on such statement has an equal opportunity to ascertain the facts on which such opinion might be based." We stated further that under the circumstances "the parties dealt at arm's length," and "there was no trust relation or confidence between them." A distinction is here sought to be made between that case and the one before us in that defendant there expressly described the estimate as "his opinion of the value." It is plain, however, that a statement of value is no less a matter of opinion when not specifically said to be such than it is when in fact so described. Plaintiffs were not entitled to rely upon the president's statements for the reason that they were merely trade talk, of the sort incidental to every bargaining transaction, and it is clear that they were such regardless of whether or not they were specifically so described. We do not mean to say that under no circumstances may a statement of value constitute a fraudulent misrepresentation sufficient to support an action for deceit. We are satisfied, however, that the statements here alleged are insufficient under the circumstances disclosed.

With regard to the statement that unless plaintiffs accepted the offer of purchase the company "would have to be dissolved at a great loss and sacrifice to all of the stockholders," it is even more obviously a matter of opinion, and one which was capable of verification by plaintiffs, than the statements of value. We are convinced, therefore, that no facts sufficient to constitute a cause of action for deceit have been alleged in the statement of claim, either as amended or as sought to be

amended. In view of that fact, we need not consider further the other points discussed in the paper books.

Judgment affirmed.

Mr. Justice KEPHART dissented.