401 A.2d 1203

SKI ROUNDTOP, INC., Individually and derivatively on behalf of Ski Yellowstone, Inc., Appellants,

v.

John P. HALL, Sherrill Hall, Frederick L. Morgenthaler and Charles R. Miller, Jr.

and

SKI YELLOWSTONE, INC., Nominal Defendant,

v.

Irvin S. NAYLOR and Johanns Geier, Additional Defendants,

v.

Gerald HALL, W. Fred Rosenmiller, II, Lisl Mayer, Richard Maguire, Edward St. John, Glenn W. Munns, and L. Frederick Pack, Further Additional Defendants.

Superior Court of Pennsylvania.

Argued Sept. 11, 1978.

Decided April 12, 1979.

268

Wentworth D. Vedder, York, for appellants.

Jack M. Stover, Harrisburg, for appellees John P. Hall, Sherrill Hall, Frederick L. Morgenthaler, III, and Charles L. Miller, and Ski Yellowstone, Inc., nominal defendant.

No appearance entered nor briefs filed for appellees Irvin S. Naylor and Richard Maguire.

Before CERCONE, SPAETH and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from an order dismissing appellant's complaint on the ground that a Pennsylvania court will not take jurisdiction of a case that involves regulating or interfering with the internal management or affairs of a foreign corporation. *Plum v. Tampax, Inc.*, 399 Pa. 553, 160 A.2d

549 (1960); *Kahn v. American Cone & Pretzel Co.*, 365 Pa. 161, 74 A.2d 160 (1950); *Hopkins v. Great Western Fuse Co.*, 343 Pa. 438, 22 A.2d 717 (1941). In stating the case we shall, as we must, *Upholsterers' International Union v. United Furniture Workers*, 356 Pa. 469, 52 A.2d 217 (1947), take the well-pleaded allegations of the complaint as true.

Appellant, a Pennsylvania corporation, is a minority shareholder in Ski Yellowstone, Inc., a Montana corporation with its principal executive offices in Pennsylvania. Appellant's complaint comprises both derivative [1] and individual causes of action. Yellowstone is a nominal defendant; the other defendants are various officers and board members of Yellowstone, all residents of Pennsylvania.

Count I alleges violations of the Pennsylvania Securities Act of 1972, Dec. 5, 1972, P.L. 1280, No. 284, § 101 *et seq.*, 70 P.S. § 1–101 *et seq.*[2] The facts alleged are as follows.

Prior to July 16, 1976, Yellowstone was considering selling notes convertible into Yellowstone common stock at $.20 per share. In order to defeat this proposal, however, appellee John P. Hall circulated the false information that

a. Mr. Geier's [not further identified] demanded employment contract would be substantially more expensive to Yellowstone [more expensive than what is unclear].

1. The complaint alleges that appellant did not make a demand on Yellowstone because such a demand would have been futile.

2. The complaint does not specify which section of the Act is the basis of the action. The only section that would seem to apply, however, is:
§ 1—401. Sales and purchases
  It is unlawful for any person, in connection with the offer, sale or purchase of any security in this State, directly or indirectly:
    (a) To employ any device, scheme or artifice to defraud;
    (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
    (c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.
Paragraph 14 of the complaint alleges that "[t]he fraud practiced and the devices utilized in order to effectuate the conspiracy consisted of false representations by the individual defendants . . . and failure to disclose material facts . . .."

b. Changes in the Board of Directors and Officers would not detrimentally affect the other shareholders and that basically the officers remained unchanged.

Complaint at paragraph 18.

Though the complaint says these were only part of the misrepresentations made in connection with the defeat of the $.20 per share proposal, no other misrepresentation is alleged.

The Yellowstone board abandoned the $.20 per share proposal, but then considered a sale of common stock at $.10 per share. Hall opposed this proposal also, and it was defeated. However, a proposal to sell stock at $.05 per share (the "Series C offer") was approved, the approval specifying a minimum number of shares to be sold to make the offer effective, and setting various dates for installment payments of the purchase price. Hall subscribed to a large number of shares, but at the last moment he withdrew his subscription with the result that the Series C offer was threatened by undersubscription. Later Hall agreed to purchase enough shares to make the offer effective, and thereby he became the majority shareholder. At a special meeting of shareholders on November 5, 1976, Hall as majority shareholder was able to have the board of directors reconstituted and two directors elected.[3] The new board then voted to postpone the first installment payment for Series C purchasers.

The next day, November 6, the board authorized the sale of more shares at $.05 each (the "Series D offer"), and specified that proceeds from the Series C and Series D offers should be used to fund primary and secondary budgets, respectively. The shareholders ratified the board's actions, though appellant and other minority shareholders voted against ratification. Appellant asserts that Hall had falsely

3. At various places in the complaint suspicion is cast upon Hall's claim to be majority shareholder and upon the right of the new directors to hold office. *See, e. g.,,* complaint at paragraphs 26 and 47. Such disputes are not for our courts to decide. *National Baptist Convention, U. S. A., Inc. v. Taylor,* 402 Pa. 501, 166 A.2d 521 (1961); *Loan Society of Philadelphia v. Eavenson,* 241 Pa. 65, 88 A. 295 (1913).

"represented to Yellowstone, the Board of Directors and Shareholders that it was necessary for Yellowstone to offer the Series 'D' issue." Complaint at paragraphs 38, 56.

By December 23, insufficient subscriptions to the Series D offer had been received. The board therefore increased the number of shares authorized to be sold, lowered the price to $.01 per share, extended the payment schedule for Series D purchasers, and indefinitely postponed the installment payments due in the Series C offer. At a special meeting of shareholders on January 7, 1977, these actions were ratified.

Appellant alleges that, in addition to the misrepresentations already mentioned, Hall failed to disclose the following: that he had a scheme to take over Yellowstone and to defraud it by purchasing stock for inadequate consideration; that he had voted against the $.10 per share proposal in order to force a lower price pursuant to this takeover plan; and that he had intended to postpone the installment due dates.

Count II, in assumpsit, is based on the breach by Hall (and by any other appellees who subscribed to the Series C offer) of the agreement to pay for the shares according to the original terms of the offer.

Count III, in trespass, alleges that appellees breached their fiduciary duty to Yellowstone by the acts described in Count I; by making reckless investments; by bungling an opportunity to buy a tract of land under favorable circumstances; and by selling shares in the Series C and D offers for less than true value.

Count IV incorporates the allegations of Counts I and III, and charges common law fraud.

Count V is an individual (i. e., not derivative) claim for breach of fiduciary duty to appellant as minority shareholder, in that appellees favored Hall's interests above appellant's; diluted the value of its investments, and therefore appellant's equity, by the various stock sales and payment postponements; and violated various corporate by-laws relating to shareholders' rights.

The remedy requested on each count is damages.

■ The question whether these allegations involve the internal management of a corporation is not a question of whether the lower court had jurisdiction, but whether the court should have exercised the jurisdiction that it had. *Plum v. Tampax, Inc., supra; Wettengel v. Robinson,* 288 Pa. 362, 136 A. 673 (1927). The general proposition that a court will not take jurisdiction of a case that involves regulating or interfering with the internal management of a corporation is based on a number of considerations: the recognition of the fact that the court may lack power to enforce its decree, *Moore v. Nat'l Ass'n for the Advancement of Colored People,* 425 Pa. 204, 229 A.2d 477 (1967); a reluctance to interpret the laws of another state, *Thompson v. Southern Connellsville Coke Co.,* 269 Pa. 500, 112 A. 533 (1921); a reluctance to get involved where the differences between the parties are merely a matter of business judgment, *Plum v. Tampax, supra; Thompson v. Southern Connellsville Coke Co., supra; McCloskey v. Snowden,* 212 Pa. 249, 61 A. 796 (1905); and the view that

> the Pennsylvania resident has no right to call upon the courts of his own state to protect him from the consequences of a voluntary membership in a foreign corporation. By the very act of membership he intrusted his money to the control of an organization owing its existence to and governed by the laws of another state. *Moore v. Nat'l Ass'n for the Advancement of Colored People, supra,* 269 Pa. at 208, 229 A.2d at 479.

*Accord, Kelly v. Thomas,* 234 Pa. 419, 83 A. 307 (1912); *Madden v. Electric Light Co.,* 181 Pa. 617, 37 A. 817 (1897).

In *Madden v. Electric Light Co., supra,* the Supreme Court said that internal management is affected

> [w]here the act complained affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president or other officer, and is the act of the corporation, whether acting in stockholders' meeting or through its agents, the board of directors

.   .   . .

*Id.*, 181 Pa. at 622, 37 A. at 818.

*See also Plum v. Tampax, supra; McCloskey v. Snowden, supra.*

In addition, the court will decline jurisdiction where the remedy requested involves the visitorial powers of the court. *Kelly v. Brackenridge Brewing Co.*, 318 Pa. 254, 178 A.2d 487 (1935); *Thompson v. Southern Connellsville Coke Co., supra; Loan Society of Philadelphia v. Eavenson*, 241 Pa. 65, 88 A. 295 (1913).

Visitorial power is thus defined: "By 'visitation of corporations' is meant the act of examining into their affairs. The person authorized to make such examination is called the visitor. The purpose of visitation is to supervise, direct and control the management of the corporation": 14 Corpus Juris, 341, article 2198.

*Thompson v. Southern Connellsville Coke Co., supra*, 269 Pa. at 503–04, 112 A. at 534.

■ In obedience to these principles, we affirm the lower court's dismissal of Count II as involving an intra-corporation dispute over the terms of the Series C offer and the validity of the amendment of the offer; of Count III as involving matters of business judgment; and of Count V as involving the sort of dispute between an individual shareholder and the corporation with respect to which the shareholder must seek redress elsewhere, *Moore v. Nat'l Ass'n for the Advancement of Colored People, supra; Madden v. Electric Light Co., supra.*

■ Counts I and IV, however, may not be so quickly disposed of, for they allege fraud, which our courts have regarded in a special light:

[I]n a case . . . where the foreign corporation was served and all the parties or property directly involved was within the jurisdiction of the court, if the actual exercise of visitorial powers is not requisite to the relief, the rule as to non-interference should be restricted and not carried further than is absolutely required by universal fixed rules of law; for, where possible, we should

prevent its use as a cloak to cover apparent fraudulent conduct on the part of officers of foreign corporations to the prejudice of Pennsylvania stockholders.

*Kelly v. Thomas, supra,* 234 Pa. at 431, 83 A. at 311. The distinction between fraud and mismanagement of the business-judgment sort was also acknowledged in *McCloskey v. Snowden, supra,* where the Court declined jurisdiction because fraud was insufficiently alleged, the implication being that otherwise it would have taken jurisdiction.[4] A helpful analogy may also be found in *Plum v. Tampax, supra,* where the plaintiff charged that the corporation had, "pursuant to an orderly scheme, purposely manipulated its subsidiaries so as to defeat plaintiff's right under her contract . . . ." 399 Pa. 559, 160 A.2d at 552. Rejecting the defendant's argument that internal management was involved, the Court held:

> The plaintiff does not question the correctness of the defendant's acts with reference to a general policy of corporate management; regardless of whether each of the defendant's acts might be unobjectionable when individually considered, she contends that they were intentionally made to defraud her of her rights in violation of an alleged duty owed by the defendant under the contract. Any review we might make of the acts of the defendant with regard to the internal affairs of its foreign corporate subsidiaries would not be for the purpose of determining their individual correctness, but rather to review them as evidence of an intentional scheme to violate contractual duties. Any decree entered by our courts would involve

4. *But see Kahn v. American Cone & Pretzel Co.,* 365 Pa. 161, 74 A.2d 160 (1950), where the Court distinguished *Ferrari v. Level Coal Mining Co., Inc.,* 358 Pa. 44, 55 A.2d 755 (1947), by saying:

> In effect, the bill [in *Ferrari*] charged the defendants with fraud and corporate mismanagement for the remedy whereof the plaintiff would have been compelled to resort to the courts of the corporation's domicile.

*Id.,* 365 Pa. at 167, 74 A.2d at 163.

The reported decision in *Ferrari,* however, does not in fact indicate what the allegations there were; the opinion, one paragraph long, merely restates that courts will not take jurisdiction where the relief sought concerns the internal management of a foreign corporation.

damages to a promise for breach of contract, not damages to a shareholder for mismanagement by directors of a foreign corporation.

399 Pa. at 559, 160 A.2d at 552.

These cases should not be read too broadly, for the issue of whether to exercise jurisdiction should not be—and has not been—resolved by looking only to the nature of the allegations; the courts have also considered a number of factors in addition to alleged fraud as pertinent to deciding whether, in the end, it would be fair and sensible for the court to hear the case.[5] Even if one puts aside such qualification, how-

---

5. Thus, despite allegations of fraud, courts have declined jurisdiction where the remedy asked was nonetheless visitorial. *See Kelly v. Brackenridge Brewing Co., Inc., supra* (remedy visitorial; unclear what remedy was requested); *National Guarantee Credit Corp. v. Worth & Co.*, 274 Pa. 148, 117 A. 914 (1922) (requested remedy: that court declare contracts void and fraudulent, order accounting and return of certain property, enjoin defendant from disposing of it, and appoint temporary receiver); *Thompson v. Southern Connellsville Coke Co., supra* (requested remedy: injunction restraining defendants from selling company's products, and declaration that shareholder resolution was void); *Madden v. Electric Light Co., supra* (requested remedy: decree that electric lighting conduits might be used by anyone desiring to use them, the court to specify the terms; that bids be invited; that the corporation management be declared fraudulent and collusive; and that a master be appointed). Similarly, in *Kelly v. Thomas, supra*, the Court said jurisdiction could be exercised where fraud was alleged if the remedy asked were not visitorial and the parties and property directly involved were within the jurisdiction. (On the facts, however, the court declined jurisdiction.) In *Loan Society of Philadelphia v. Eavenson, supra*, the Court took jurisdiction over a complaint alleging fraud, but only after deciding that a number of circumstances made taking jurisdiction sensible. The remedy—discovery of all sums paid to the defendants by the plaintiff, an accounting of the sum for which the defendants were liable, and a decree that they pay it—was held to be non-visitorial; the corporation itself was the plaintiff, thus acquiescing to jurisdiction; the defendants were residents and were served; the decree could be enforced; no attempt was being made to control the acts of any officials of the corporation (indeed, the defendants had ceased being officers of the corporation when the suit was brought) nor to determine the rights of the stockholders; since the defendants were Pennsylvania residents, if Pennsylvania courts did not exercise jurisdiction, the corporation would most likely have no remedy elsewhere. "It is no hardship on the defendants to be required to answer for their acts in the jurisdiction in which they reside." 241 Pa. at 71, 88 A. at 296.

ever, and looks only to the nature of appellant's allegations, still the complaint does not plead sufficient reason for a Pennsylvania court to take jurisdiction.

Averments of fraud are meaningless epithets unless sufficient facts are set forth which will permit an inference that the claim is not without foundation nor offered simply to harass the opposing party and to delay the pleader's own obligations. For this reason our rules require that fraud in either a complaint or reply must be "averred with particularity." Pa.R.C.P. 1019(b). Admittedly the line between pleading facts and evidence is not always bright; therefore, we frequently condone the inclusion of statements, which except for this requirement, would be considered impertinent. See *Williams v. Rose*, 403 Pa. 619, 170 A.2d 577 (1961); *Custis v. Serrill*, 303 Pa. 267, 272, 154 A. 487, 489 (1931); Goodrich-Amram § 1019(b)–1 (1962). While it is impossible to establish precise standards as to the degree of particularity required in a given situation, two conditions must always be met. The pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense and they must be sufficient to convince the court that the averments are not merely subterfuge. *Bata v. Central-Penn Nat'l Bank of Phila.*, 423 Pa. 373, 379–80, 224 A.2d 174, 179 (1966), *cert. denied*, 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 433 (1967).

Merely alleging fraud as a legal conclusion adds nothing if it is not based upon facts clearly and explicitly set forth as constituting such fraud [citations].

*Hornsby v. Lohmeyer*, 364 Pa. 271, 72 A.2d 294 (1950).

Here, appellant has alleged that Hall falsely stated that:

a. Mr. Geier's demanded employment contract would be substantially more expensive to Yellowstone.

b. Changes in the Board of Directors and Officers would not detrimentally affect the other shareholders and that basically the offers remained unchanged.

Complaint at paragraph 18.

and that

> it was necessary for Yellowstone to offer the Series "D" issue.

Complaint at paragraph 38.

These allegations are insufficient to support a claim of fraud. Nowhere does the complaint indicate in what respect these statements were false, or distinguishable from mere business judgments. As the Court said in finding insufficient allegations of fraud in *McCloskey v. Snowden, supra*:

> For all that appears, it is merely a difference of views and judgment between the complainants as individual or minority stockholders and the constituted board of management of the corporate affairs.

*Id.*, 212 Pa. at 253, 61 A. at 798.

*See also, Moore v. Steinman Hardware Co.*, 319 Pa. 430, 179 A. 565 (1935) ("With regard to the statement that unless plaintiffs accepted the offer of purchase the company 'would have to be dissolved at a great loss and sacrifice to all of the stockholders,' it is even more obviously a matter of opinion, and one which was capable of verification by plaintiffs, than the statements of value. We are convinced, therefore, that no facts sufficient to constitute a cause of action for deceit have been alleged . . . ." *Id.*, 319 Pa. at 436, 179 A. at 568). There is a similar lack of specificity in appellant's allegations that Hall omitted to reveal that he had a take-over scheme in mind. The allegations do not supply the information required by the Securities Law, *supra*, 70 P.S. § 1–401 (illegal to "omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading").

█ Thus, we cannot determine in what way Hall's actions and omissions—if proved—were fraudulent, rather than simply an exercise of the power that a majority shareholder has. The exercise of such power, while not in itself illegal, is not unlimited; majority shareholders have a duty toward minority shareholders not to use their power in such

a way as to exclude minority shareholders from their proper share of the benefits accruing from the enterprise. *Hornsby v. Lohmeyer, supra.* Absent fraud, however, the determination of the extent of this duty is properly litigated in the courts of the incorporating state.[6]

Affirmed.

---

**6.** We recognize that our decision, by forcing appellant to litigate his claims in Montana, may cause a problem with respect to service on the individual defendants as residents of Pennsylvania. We also recognize that the possibility of service may be an important factor in deciding whether to exercise jurisdiction. *See Loan Society of Philadelphia v. Eavenson, supra.* Nevertheless, we do not know either that a problem with respect to service will arise, or if it does, that it cannot be solved, and we shall not alter our decision only because of such considerations.