OVERFIELD v. PENNROAD CORPORA-
TION et al.

No. 7234.

Circuit Court of Appeals, Third Circuit.

June 27, 1940.

R. E. Lee Marshall, of Baltimore, Md. (Philip H. Strubing and Evans, Bayard & Frick, all of Philadelphia, Pa., Marshall & Carey, of Baltimore, Md., and Daniel O. Hastings and Hastings, Stockly, Duffy & Layton, all of Wilmington, Del., on the brief), for appellant.

Robert T. McCracken, of Philadelphia, Pa. (C. B. Heiserman, of Philadelphia, Pa., on the brief), for appellees.

Before BIGGS, CLARK, and JONES, Circuit Judges.

JONES, Circuit Judge.

This appeal is from an order of the district court dismissing the bill of complaint which the plaintiff had filed in her own behalf as a stockholder and in behalf of all other stockholders of a foreign corporation for the redress of wrongs allegedly done the corporation.

The bill avers the plaintiff's ownership of voting trust certificates issued under an agreement embracing the entire capital stock of Pennroad Corporation, a corporation of the state of Delaware where it maintains its principal and only office. Shortly after the institution of the suit in the court below, the voting trust agreement terminated through the expiration of its definite term and the certificate holders became entitled to the shares represented by their respective certificates.

The gravamen of the complaint lies in the plaintiff's allegations that the Pennsylvania

Railroad Company fraudulently dominated and controlled Pennroad for the unjust enrichment of the railroad and to the unconscionable detriment of Pennroad. This control, as the bill avers, was effected through the medium of the voting trust agreement whereby the trustees named therein, being certain officers or directors, or both, of the railroad company, were enabled to vote the Pennroad stock for the election of directors for Pennroad from time to time who knowingly and intentionally did the alleged wrongful bidding of the railroad company for the latter's material benefit and to the hurt of Pennroad. As the bill discloses, of the eight persons who served as directors of Pennroad within the period of time embraced by the complaint, seven of them at least were contemporaneously directors of the Pennsylvania Railroad Company. In addition, the president of Pennroad had been the treasurer of the railroad until he resigned the latter office to assume the presidency of Pennroad.

The allegedly fraudulent action, whereof the plaintiff complains in particular, was the railroad's using, through its alleged control of Pennroad's directors, Pennroad's assets for the creation and operation of a freight forwarding company designed to produce business for the railroad company at Pennroad's sole risk of loss in connection therewith. The bill avers that, at the instance of the railroad company, Pennroad's board of directors invested $2,300,000 of Pennroad's funds for the promotion of the freight forwarding company; that the forwarding company leased from the railroad company, at rentals fixed by the latter, all railroad facilities needed for the conduct of the forwarding business and arranged with the railroad to route over the lines of the latter all traffic handled by the forwarding company; that the operation of the freight forwarding company was carried on at a continuous and heavy loss to Pennroad for a period of about four years, at the end of which time, Pennroad's interest in the forwarding company was sold for $400,000; that Pennroad lost altogether through the freight forwarding venture more than $4,000,000; and, that the railroad company obtained from the project in the way of freight revenues and rentals a sum in excess of $5,000,000.

The bill of complaint alleges that the forwarding company transaction constituted a gross and flagrant fraud upon Pennroad and its certificate holders; that the idea was conceived by the Pennsylvania Railroad in reckless and wanton disregard of the duties and obligations arising out of the relationship of the railroad to Pennroad; and that the individual defendants, in their capacity as directors of Pennroad, participated in the perpetration of the alleged fraud by combining and conspiring with the railroad to carry out the latter's fraudulent purposes and, thereafter, by carrying out such purposes. The bill also avers that the directors of Pennroad combined and conspired with the railroad company to conceal the true facts respecting the railroad's alleged improper use of Pennroad and that the actual situation became known to the complainant and other certificate holders only about a year prior to the institution of the present suit through a public investigation by a committee of the United States Senate.

In support of the plaintiff's right to file a stockholder's derivative suit without first making demand that the corporation take action to the same end, the plaintiff avers that such a demand would have been useless and futile because of the interest of Pennroad's directors in sustaining their own and the railroad's actions which the plaintiff alleges were wrongful.

The plaintiff, who is a citizen and resident of the state of Utah, instituted the suit in the District Court for the Eastern District of Pennsylvania, basing federal jurisdiction upon diversity of citizenship. All of the individual defendants, being the directors and the president of Pennroad or the personal representatives of such directors as are deceased, are citizens of Pennsylvania and, save for one exception, are residents of the eastern district of that state. All of these defendants were served and, such as have appeared, among whom are the personal representatives of the deceased director who did not reside in the district, appeared generally. Likewise, the Pennsylvania Railroad Company, a corporation of the state of Pennsylvania, having its principal office in the eastern district of the state, was duly served as a defendant and has appeared generally. Pennroad Corporation, the remaining defendant, was served by the Marshal of the district of its domicile upon an order for such service entered by the court below. Pennroad, however, appeared specially in order to move the dismissal of the suit for want of jurisdiction of the subject matter, or,

in lieu thereof, to quash the return of service of the summons upon Pennroad.

The court below declined to quash the return of service and we think its action in such regard was entirely proper. Section 51 of the Judicial Code as amended by the Act of April 16, 1936, c. 230, 49 Stat. 1213, 28 U.S.C.A. § 112, provides that "suit by a stockholder on behalf of a corporation may be brought in any district in which suit against the defendant or defendants in said stockholders' action, other than said corporation, might have been brought by such corporation and process in such cases may be served upon such corporation in any district wherein such. corporation resides or may be found". The plain words of this statutory provision admit of no departure from their meaning by way of interpretation. The power of Congress to determine the venue of an action and to provide for service of process elsewhere has been expressly confirmed. See Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, at page 374, 47 S.Ct. 400, 71 L.Ed. 684, citing United States v. Union Pacific R. R. Co., 98 U.S. 569, 604, 25 L.Ed. 143; Robertson v. Railroad Labor Board, 268 U. S. 619, 622, 45 S.Ct. 621, 69 L.Ed. 1119. It cannot be disputed that Pennroad, a Delaware corporation, could have maintained a suit in the court below for the same cause of action on the ground of diversity of citizenship. All of the present defendants except for Pennroad are citizens and residents of Pennsylvania. Applying, then, the clear intent of the statute to the facts in this case, it follows conclusively that Pennroad was amenable to service of the summons in the district wherein it resides or may be found. And that is precisely where Pennroad was served. The appellees' supplemental motion to quash, itself, recites that the "alias summons was served by the United States Marshal at Wilmington, Delaware, on April 27, 1939, by delivering a true copy thereof to S. H. Ogden, treasurer of The Pennroad Corporation, at the principal and only office and place of business of said Delaware corporation," etc. The court below, therefore, rightly refused to quash the return of service of the summons.

The appellees' motion to dismiss rests upon two grounds, (1) that the court lacked jurisdiction "because the present action involves the internal affairs and management of a Delaware corporation not transacting business in the Commonwealth of Pennsylvania or the Eastern District thereof", and (2) that the court should not exercise jurisdiction "because the subject matter of the present action is now at issue and pending before the domiciliary Court of Chancery of the State of Delaware * * * in a proceeding in equity brought by one Joseph W. Perrine * * * [and wife] on behalf of themselves and of all other stockholders and holders of Voting Trust Certificates issued in respect of the stock of The Pennroad Corporation," etc. A copy of the bill in equity in the Delaware proceeding is made a part of the motion to dismiss as an attached exhibit.

In reliance upon Rogers v. Guaranty Trust Co., 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720, the court below held that in a case such as the present a federal court possesses discretionary jurisdiction which is concurrent with the jurisdiction of the courts of the corporation's domicile. But, because of the pendency in the domiciliary state court of stockholder Perrine's suit embracing the subject matter of the present appellant's complaint, the court below exercised its discretion by dismissing the bill on the ground that "considerations of justice, expedience and efficiency" indicate "that the pending suit * * * [in the domiciliary state court] will provide full protection and redress to the plaintiff [appellant]."

In the Rogers case, supra, it was said at page 131 of 288 U.S., at page 298 of 53 S.Ct., 77 L.Ed. 652, 89 A.L.R. 720, that "Obviously no definite rule of general application can be formulated by which it may be determined under what circumstances a court will assume jurisdiction of stockholders' suits relating to the conduct of internal affairs of foreign corporations. But it safely may be said that jurisdiction will be declined whenever considerations of convenience, efficiency, and justice point to the courts of the state of the domicile as appropriate tribunals for the determination of the particular case." In passing, it may be noted that the rule as to discretionary federal jurisdiction was stated in the Rogers case with respect to stockholders' suits relating to the conduct of the internal affairs of foreign corporations. The justification for entertaining jurisdiction where the stockholder's suit does not involve the management of the internal af-

fairs of a foreign corporation would hardly be 'less. In fact, it might reasonably be that, in such instance, federal jurisdiction, when properly invoked, is mandatory rather than discretionary. But, without implying that the complaint in the instant appeal does involve the management or control of the internal affairs of a foreign corporation, we pass immediately to a consideration of the district court's reason for the manner of its exercise of the discretion contemplated by the Rogers case.

 The rule of convenience as applied to discretionary jurisdiction is not in derogation of jurisdiction. It seeks to lead to that jurisdiction, whether it be federal or state, which, under attending circumstances, gives best prospect of affording a convenient, efficient and just determination of the particular case. The rule is intended to promote justice and not to furnish an avenue of escape for those who should answer somewhere for the wrongs charged against them. Coming to the present case, the record discloses that, while the directors of Pennroad were joined as parties defendant in the Delaware suit, none of them has been served, nor can any of them be involuntarily served with the process of the Delaware court. None of them has appeared voluntarily. Nor can the appearance therein of any of them be compelled. The Delaware court is, therefore, without the means of affording a convenient, efficient and just determination of the case with respect to essential parties who are charged in the present suit with wrongdoing.

Inability to subject proper parties to the suit in the domiciliary court is material in determining whether the domiciliary jurisdiction is convenient, efficient and effective. Cf. Rogers case, supra, where want of service was pointedly commented upon, 288 U.S. at page 131, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720. And, the fact that the domiciliary court is unable to obtain jurisdiction over proper parties defendant should have inclined the district court's exercise of its discretion against the furtherance of the ineffectual domiciliary jurisdiction if the federal jurisdiction affords the means of a convenient, efficient and just determination of the case, which it unquestionably does. All parties defendant to the instant suit were duly served, including Pennroad Corporation, a necessary party. See Philipbar v. Derby, 2 Cir., 85 F.2d 27, and cases there cited at

page 30. The effectiveness of the district court's jurisdiction is, therefore, apparent. So far as convenience is concerned, a place more convenient to the defendants for the conduct of the litigation than Philadelphia, the seat of the district court in which the plaintiff's suit is pending, could hardly be found. And, of course, the efficiency of the federal jurisdiction is unquestioned. In opposition to this, however, the appellee argues that the Delaware suit supplies the requirements of the rule of convenience, the Pennsylvania Railroad Company and Pennroad having been served and having appeared therein. The appellee bases its contention, as to the convenience and effectiveness of the Delaware suit, upon the fact that the plaintiff apparently does not seek anything of the directors of Pennroad personally, the prayer for an accounting to Pennroad being asked of the railroad alone. But, this overlooks that the bill also prays that the court adjudge "the Pennsylvania Railroad Company and the individual defendants * * * jointly and severally responsible and liable for all losses incurred or suffered by The Pennroad Corporation by reason of * * * the transactions * * * described in the complaint." In the light of the allegations of the bill and the relief prayed for in behalf of Pennroad, the determination of liability, if any, among the several defendants, including the directors of Pennroad, is appropriately a matter for the trial court upon proofs offered by the respective parties. The pending suit in the district court will afford a more convenient, efficient and effective disposition of the case than is possible in the domiciliary court under the circumstances. The court below should, therefore, have acted accordingly by entertaining the plaintiff's complaint.

 So much disposes of the basis upon which the court below based its order of dismissal. But, the appellee contends that since the decision in Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, a federal court's jurisdiction in a case of a stockholder's suit for the enforcement of the rights of a foreign corporation is to be determined by the law of the state in which the district of the federal court is located and that, under the law of Pennsylvania, a court of equity would not take jurisdiction of the subject matter of the plaintiff's suit. It would seem that Erie Railroad Co. v. Tompkins was concerned

with the substantive law of a state rather than a state rule respecting the jurisdiction of its courts. However, it is unnecessary for us to pass upon the suggested effect of Erie Railroad Co. v. Tompkins.

Concededly, a Pennsylvania court of equity will not entertain jurisdiction of a stockholder's suit involving the management of the internal affairs of a foreign corporation but will leave such matters to the jurisdiction of a court of the corporation's domicile. That such is the Pennsylvania rule admits of no dispute. Kelly v. Brackenridge Brewing Co., Inc., et al., 318 Pa. 254, 178 A. 487; Thompson v. Southern Connellsville Coke Co. et al., 269 Pa. 500, 112 A. 533; Hogue v. American Steel Foundries, 247 Pa. 12, 92 A. 1073; Kelly v. Thomas, 234 Pa. 419, 83 A. 307, 51 L.R.A.,N.S., 122; McCloskey v. Snowden, 212 Pa. 249, 61 A. 796, 108 Am. St.Rep. 867; and Madden et al., v. Penn Electric Light Co. et al., 181 Pa. 617, 37 A. 817, 38 L.R.A. 638. But the present suit does not involve the management or control of the internal affairs of a foreign corporation and, in such instance, a Pennsylvania equity court will take jurisdiction of a complaint seeking redress in behalf of a foreign corporation. Loan Society v. Eavenson, 241 Pa. 65, 88 A. 295, 296.

In the Eavenson case, supra, a Delaware Corporation filed a bill in equity in the courts of Pennsylvania to compel an accounting by resident defendants for losses alleged to have been suffered by the corporation through the negligent and fraudulent actions of the defendants in their respective capacities as officers and directors of the corporation. The lower court dismissed the bill on the ground that the suit involved the management of the internal affairs of a foreign corporation. This action, the Supreme Court of the state reversed, saying that in no proper sense could the suit "be regarded as an attempt on the part of the plaintiff to have the court control or direct the affairs of the corporation" and that the relief sought would not require "an interference with the internal management of the corporation within the contemplation of the rule which denies jurisdiction to our courts". In confirming equity's jurisdiction in Pennsylvania in such circumstances, the court concluded by saying that the suit "seeks redress for the mismanagement and misfeasance of the defendants as directors, but it does not ask the court to control or regulate the management of

the corporation". Likewise here, no corporate action on the part of Pennroad is sought or contemplated by the bill, and the relief prayed for, if granted, would not require that any defendant director be controlled or interfered with in the exercise of his office of director or his discretionary powers incident thereto. As the record discloses, six of the directors against whom the plaintiff charges wrongdoing are dead, and the members of the current board of Pennroad through whom orders and decrees for corporate management and control would necessarily have to be effected, if such were contemplated, are not parties to the suit. The relief sought is the imposition of liability upon the Pennsylvania Railroad Company and former directors of Pennroad for alleged wrongdoing and an accounting by the railroad to Pennroad for consequent losses. The conclusion naturally follows that the instant suit does not involve the management or control of the internal affairs of Pennroad, the foreign corporation. Wherefore, under the ruling in the Eavenson case, the state equity court would have jurisdiction of the subject matter of the bill.

The appellee urges that in the Eavenson case, the foreign corporation, itself, was the plaintiff; that a Pennsylvania court of equity will not entertain a stockholder's bill in behalf of a foreign corporation for a cause of action for which the corporation might have sued; and that the right of a foreign corporation to sue in the state court for the enforcement of its rights was not extended to a stockholder of the corporation by the amendment of April 16, 1936, to Section 51 of the Judicial Code, as the complainant argues. With the appellee's latter contention, we fully agree. The amendment to the Judicial Code provides for service in connection with venue, with which the statute is chiefly concerned, and it was not intended thereby to confer upon a stockholder of a corporation a right of action which he would not otherwise possess. However, it is our opinion that a Pennsylvania court of equity will entertain a stockholder's bill in behalf of a foreign corporation under appropriate circumstances, that is, where the corporation refuses to sue, if the corporation itself might have sued in the state court for the redress of the same alleged wrongs. We are unable to perceive any implied distinction, and certainly none is

expressed, in the Pennsylvania cases between equity's jurisdiction of a foreign corporation's complaint and a stockholder's complaint in behalf of the foreign corporation, so far as jurisdiction of the subject matter is concerned, where the suit does not involve the management or control of the internal affairs of the foreign corporation. The reason the state court of equity declines to take jurisdiction of a suit involving the internal affairs of a foreign corporation is because the matter will require the exercise of visitorial power. Such power, a court of equity in Pennsylvania will not exercise over a foreign corporation, nor will it interfere "in determining the rights or duties of the directors or officers of the corporation under the laws of a foreign jurisdiction". Those matters are "wholly within the jurisdiction of the courts of the state which creates the corporation". Thompson v. Southern Connellsville Coke Co. et al., supra [269 Pa. 500, 112 A. 534]. But, there can be no more occasion in the instant suit for the court to exercise visitorial power upon the foreign corporation than there was in the Eavenson case, supra. Hence, the basis for a denial of state court jurisdiction, which was wanting there, is likewise wanting here.

The cases which the appellee cites and relies upon where equity's jurisdiction has been denied in Pennsylvania in respect of a stockholder's bill in behalf of a foreign corporation disclose that the respective complainants were seeking to interfere with the management and control of the internal affairs of foreign corporations. Such cases are therefore distinguishable from the present. Likewise, the cases which the appellee cites in support of the definition of what constitutes interference with the management and control of the internal affairs of a corporation, as enunciated by Judge Stone in North State Copper & Gold Mining Co. v. Field, 64 Md. 151, 20 A. 1039, were instances which patently called for interference with the internal affairs of foreign corporations. The intended scope of the definition, which is general, is delineated by the cases in which it has been applied. Thus, North State Copper & Gold Mining Co. v. Field, supra, where the definition was first given expression, presents the case of a resident stockholder's application for a mandamus upon a foreign corporation for reinstatement as a stockholder, his stock having been forfeited for nonpayment of assess-

ment. (Cf. Machen v. Machen & Mayer Electrical Mfg. Co., 237 Pa. 212, 85 A. 100, 42 L.R.A.,N.S., 1079, Ann.Cas.1914B, 420, where the Pennsylvania Supreme Court granted mandamus against a foreign corporation upon the application of a director for leave to inspect the books of a corporation.) Beasley et al. v. Mutual Housing Co., Inc., et al., 59 App.D.C. 245, 39 F.2d 290, which quotes Judge Stone's definition, relates to controversies arising among the stockholders of a foreign corporation and the relief sought would have required the court to take control of the affairs of the corporation in order to determine and enforce the rights of the stockholders inter sese. In Wallace v. Motor Products Corp. et al., D.C., 15 F.2d 211, which also quotes from the definition in the Field case, the complainant, a minority holder of common stock in a foreign corporation, assailed the issuance of preferred stock under a reorganization plan which rightly was to be adjudged by the courts of New York, the domicile of the corporation, according to the laws of that state. In Madden et al. v. Penn Electric Light Co., 181 Pa. 617, 37 A. 817, 38 L.R.A. 638, where the definition is quoted, stockholders of a foreign corporation sought relief in equity in Pennsylvania from an alleged fraudulent increase and issue of capital stock by the corporation for the personal benefit of officers and others, the bill also alleging that the certificates of the vote for such increase filed by the officers of the corporation in the state of its domicile were false. The allegations of the bill and the relief prayed for plainly contemplated an interference by the Pennsylvania courts with the management of the internal affairs of the foreign corporation. The case of McCloskey v. Snowden, 212 Pa. 249, 61 A. 796, 798, 108 Am.St.Rep. 867, was "merely a difference of views and judgment between the complainants as individual or minority stockholders and the constituted board of management of the corporate affairs". Kelly v. Thomas, 234 Pa. 419, 83 A. 307, 51 L.R.A.,N.S., 122, was an attempt by stockholders to enforce their foreign corporation's contract rights with another corporation in which the defendant officers of the foreign corporation were also stockholders and officers. No right to file a derivative suit was disclosed by the bill and the foreign corporation, an indispensable party, was not served and did not appear. Hogue v. American Steel Foundries, 247 Pa. 12, 92 A. 1073, 1074,

was an action in assumpsit against a foreign corporation to recover "the amount of certain dividends" which the plaintiff stockholders averred "should have been declared and paid, upon the stock owned by them",—clearly a matter for corporate action subject to the requirements and limitations of the laws of the state of the corporation's domicile.

The appellee stresses that a charge of fraud does not change what is internal to the management of a corporation into something external, citing Wallace v. Motor Products Corp. et al., supra. So much may be readily conceded but it is not pertinent here. The instant suit does not involve the management of the internal affairs of Pennroad, not because of the charges of fraud in connection with the matters complained of in the bill, but because of the inherent nature of the wrongdoing alleged in the complaint and the character of relief sought. Loan Society v. Eavenson, supra. And, the plaintiff's right to file a derivative suit for the redress of wrongs allegedly done the Pennroad Corporation, in whose behalf alone relief is sought, is not questioned. Nor could it well be questioned under the presently undenied averments of the bill.

We are of the opinion that, even if Pennsylvania's rule as to the jurisdiction of her local courts with respect to suits such as the present should be controlling here, a court of equity in Pennsylvania would take jurisdiction of a suit involving like subject matter and that no good reason appears why the court below should not have exercised its properly invoked jurisdiction of the plaintiff's suit wherein all parties defendant have been duly served. Obviously, no inference is to be drawn with respect to the merits of the bill from what we have herein said or recited. The defendants have not yet answered. But, upon the motion to dismiss, we necessarily take the averments of the complaint to be true for present purposes and, upon its face, the bill states a cause of action cognizable in equity.

The order of the District Court is reversed and the bill reinstated for further proceedings.