## HIRSHHORN v. MINE SAFETY APPLIANCES CO. et al.

### Civ. No. 2811.

District Court, W. D. Pennsylvania.

March 13, 1944.

Wm. H. Eckert and Smith, Buchanan & Ingersoll, all of Pittsburgh, Pa., for plaintiff.

W. Denning Stewart, Stewart & Lewis, and Howard Zacharias, all of Pittsburgh, Pa., for defendants.

SCHOONMAKER, District Judge.

Plaintiff, on his own behalf and on behalf of all other stockholders of Carbon Monoxide Eliminator Corporation (Carbon Monoxide), brings this suit against Mine Safety Appliances Company (Mine Safety), Carbon Monoxide, Catalyst Research Corporation (Catalyst Research), and certain officers and directors of these corporations.

He seeks an accounting for profits from the use of patents owned by defendant Carbon Monoxide and its subsidiary, Catalyst Research.

The complaint contains the following allegations: Plaintiff is a resident and citizen of New York; Mine Safety, organized under the laws of Pennsylvania, has its principal place of business at Pittsburgh, Allegheny County, Pennsylvania; Carbon Monoxide, a Delaware corporation, does business in Allegheny County, Pennsylvania; Catalyst Research, incorporated in Maryland, transacts business in Allegheny County, Pennsylvania; all the individual defendants are citizens and residents of Allegheny County, Pennsylvania. Mine Safety which is engaged in the manufacture of industrial safety devices, and the several officers and directors of Mine Safety named as defendants herein, own a large majority of the capital stock of Carbon Monoxide. Carbon Monoxide, a research organization, owns 60% of the capital stock of Catalyst Research, a similar research organization.

The gravamen of plaintiff's complaint alleges: Mine Safety and the individual defendants who were officers thereof, pursuant to a plan and conspiracy, acquired control of Carbon Monoxide and Catalyst

Research by electing officers and directors of said corporations almost exclusively from officers and directors of Mine Safety, operated Carbon Monoxide and Catalyst Research as instrumentalities of Mine Safety, in order to obtain exclusive rights in any patents resulting from research by Carbon Monoxide and Catalyst Research; Mine Safety and individual defendants caused Carbon Monoxide to grant to Mine Safety exclusive right to use Carbon Monoxide's patents without adequate consideration, which license agreement is grossly unfair and unjust to Carbon Monoxide, and which constitutes a breach of trust in reckless disregard of fiduciary duties placed on Mine Safety and individual defendants; Mine Safety and individual defendants appropriated to the use of Mine Safety the profits from the use of Catalyst 111, perfected by Carbon Monoxide, and converted to the use of Mine Safety profits from the use of a helium leak-detector owned by Catalyst Research; said defendants wrongfully induced the assignment to Mines Safety of a breathing device invented by one Dr. Jackson while in the employ of Carbon Monoxide; said defendants refused to exploit valuable patents owned by Carbon Monoxide and Catalyst Research, except those which Mine Safety converted to its own use, so that the asserts of the subsidiaries are being wasted, to the detriment of Carbon Monoxide and Catalyst Research, and stockholders therein; and because of the interlocking affiliations between the corporations, it would be futile to request the directors or stockholders to bring this action.

Plaintiff prays for an accounting, rescission of the license agreement, and general equitable relief.

■ Defendants have filed a motion to stay, and a motion to dismiss. The motion to stay is based on the contention that many of the patents involved in the litigation are directly concerned with military production, and that their disclosure would be violations of our security laws[1] and Mine Safety's Government military contracts.[2]

But the relief sought in this suit does not concern the structure or details of any patent or contract, but asks only an accounting as to the profits from the use of patents owned by Carbon Monoxide and its subsidiary. Prima facie, these profits may be determined without resort to any secret military information. If at any time during the trial, it appears that further prosecution would be inimical to the interests of the United States, this motion should be reconsidered.

■ Defendant further contends in support of the motion to stay that the delay will not affect plaintiff's rights. This is not certain. Aside from considerations of defendants' financial responsibility, delay would be prejudicial to the plaintiff, jeopardizing the plaintiff's evidence by the passage of time. In a similar stockholders' suit, the Third Circuit Court had to decide the fairness of the consideration paid by a parent corporation to its subsidiary in a transaction consummated many years previous. The court said,[3]

"The testimony of adequacy and inadequacy of prices paid years ago for properties then open to limited uses and since subjected to many changes, is of little assistance. in doing exact justice between the parties in this case. It is quite impossible at this late date to determine, as a matter of fact, precisely what the several properties were worth when purchased."

That is the exact situation a court will have to face if this suit is delayed. Therefore, it cannot be said with certainty that the delay will not affect plaintiff's rights.

The motion to stay is denied.

In support of the motion to dismiss, defendants assert three reasons:

(1) Complaint is not sufficiently specific;

(2) This suit involves internal management of a foreign corporation, which the District Court should not entertain;

(3) The plaintiff does not have sufficient interest in Catalyst Research by reason of his ownership of stock in Carbon

---

[1] The Espionage Act, 50 U.S.C.A. §§ 31, 32; Act of January 12, 1938, 50 U.S. C.A. § 45 et seq.; Executive Order No. 8381 of March 22, 1940, 50 U.S.C.A. § 45 note; and Act of October 6, 1917, 35 U.S.C.A. §§ 42, 42c, as amended, dealing with disclosure of patents during war time.

[2] Defendant cites Government military-contract provision which prohibits defendant corporation from revealing information relating to work under the contract to any person not entitled to receive it.

[3] Pennsylvania Canal Co. v. Brown, 3 Cir., 1914, 235 F. 669, 685.

Monoxide to maintain this action on behalf of Catalyst Research.

Defendants' contentions on these three points must be overruled.

■ (1) The complaint is sufficiently specific. Although Rule 9(b) of the Federal Rules of Civil Procedure[4] requires that the circumstances constituting fraud must be stated with particularity, this rule does not abrogate Rule 8(a) which requires short and plain statements in the pleadings.[5] It is only necessary that the complaint set forth ultimate facts, which are the facts upon which the plaintiff asks relief, and which are sufficient to constitute his cause of action.[6] General allegations of fraud are insufficient, and enough facts must be set out to apprise the defendant what fraudulent acts are charged. Evidence and proof, however, cannot be made part of the pleadings, for that would destroy the fundamental distinction between the ultimate facts, which alone need be pleaded, and the evidence and proof upon which these facts are based.[7]

Since the function of a "notice" system of pleading is to afford fair notice of the nature and basis of the claim asserted and a general indication of the type of litigation involved,[8] defendants cannot be heard to say they do not have fair notice. Plaintiff has stated sufficient ultimate facts to notify defendants of the nature of the action, and the fraudulent acts charged.

■ (2) Generally a court will not accept jurisdiction of a suit involving internal management of a foreign corporation. But this action for an accounting cannot be considered as such a suit, in view of the decision in Overfield v. Pennroad Corporation, 3 Cir., 1940, 113 F.2d 6. That case held that a stockholders' derivative suit on behalf of a foreign corporation for an accounting did not involve internal management.[9]

■ Defendant contends that if Overfield v. Pennroad Corporation, supra, had involved the internal management of a foreign corporation, the district court's jurisdiction would have been denied. That position is incorrect. The Supreme Court of the United States has said:[10]

"* * * No definite rule of general application can be formulated by which it may be determined under what circumstances a court will assume jurisdiction of stockholders' suits relating to the conduct of *internal affairs of foreign corporations.* But it safely may be said that jurisdiction will be declined whenever considerations of convenience, efficiency, and justice point to the courts of the state of the domicile as appropriate tribunals for the determination of the particular case. * * *" (Emphasis added).

Thus Federal courts have discretion to accept jurisdiction of such a case, even though it involves the internal management of a foreign corporation. It is no abuse of discretion for this district court to accept jurisdiction in the instant case. Under the rule of convenience (see Overfield v. Pennroad, supra), there is no more appropriate tribunal than the District Court of the Western District of Pennsylvania. The principal defendant is domiciled here, as are all the individual defendants, and the foreign defendant corporations do business here. All have been properly served and entered their appearances. It would be hazardous to assume that such complete jurisdiction could be obtained elsewhere.

■ Further, the general rule as to internal affairs of foreign corporations does not maintain where the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment.[11] The instant case alleges examples of both exceptions.

Under these authorities, this court has jurisdiction.

■ (3) Defendants' third contention in support of the motion to dismiss involves

[4] Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723(c).

[5] Buckley v. Altheimer, D.C.N.D.Ill. 1942, 2 F.R.D. 285.

[6] Mumm v. Jacob E. Decker & Sons, 1936, 301 U.S. 168, 57 S.Ct. 675, 81 L. Ed. 983.

[7] Massachusetts Bonding & Ins. Co. v. Harrisburg Trust Co., D.C.M.D.Pa.1939, 27 F.Supp. 987.

[8] Continental Collieries v. Shober, 3 Cir., 1942, 130 F.2d 631.

[9] Following the ruling in Loan Society v. Eavenson, 241 Pa. 65, 88 A. 295.

[10] Rogers v. Guaranty Trust Co. of N. Y., 1933, 288 U.S. 123, 53 S.Ct. 295, 298, 77 L.Ed. 652, 89 A.L.R. 720.

[11] United Copper Securities Co. v. Amalgamated Copper Co., 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119.

stockholders' "double derivative" rights. It is a well-settled principle of law that a stockholder may enforce a cause of action belonging to the corporation, if the directors and stockholders refuse to do it.[12] Can this right be extended to enforce a cause of action in favor of a subsidiary of the corporation in which complainant is a stockholder? The better view grants the stockholder "double derivative" rights,[13] although there is authority to the contrary.[14]

Defendants assert that to permit "double derivative" suits would create an intolerable legal situation, by permitting a stockholder of a corporation to sue for any corporation whose stock was held by the initial corporation in a substantial amount. This does not follow equity practice. A review of the cases permitting "double derivative" rights shows in each case some equitable reason for permitting such practice, for otherwise the complainant would have no remedy. This principle was expressed by the Second Circuit Court of Appeals,[15] as follows:

"The justification for allowing a double derivative suit like the present to be maintained is that both the original corporation that is said to have suffered wrong and its shareholder corporation which had the right to bring a derivative suit were in the control of those charged with inflicting the corporate injury."

While contending that the plaintiff has no right to enforce the action for Catalyst Research, defendants admit that the rule may be different for holding companies. But the above quotation indicates that it is the element of control which determines the "double derivative" right, not whether the parent company is also an operating company.

To effect substantial justice, equity will pierce the corporate veil, especially when the affairs of the parent and its subsidiaries are so interwoven as to dictate the penetration. This case justifies such action to render equitable relief; plaintiff has no other remedy if it is denied.

From another viewpoint, the joinder of Catalyst Research must be upheld. It is certain that the plaintiff in the present action may properly sue Catalyst Research, its officers and directors. In this aspect, plaintiff is enforcing a *single* derivative right, i. e., the cause of action that Carbon Monoxide, as a stockholder, has against Catalyst Research, for permitting its assets to be raided. If Carbon Monoxide refuses to prosecute this cause of action, there is no doubt that a stockholder of Carbon Monoxide may do so, by a stockholders' suit. Only when the suit seeks to include adjudication of Catalyst Research's cause of action against Mine Safety, does it involve *double* derivative rights.[16] But Mine Safety is already a proper party to the action, since one phase involves the enforcement of Carbon Monoxide's cause of action against Mine Safety. This is a *single* derivative suit. Since this court has proper jurisdiction over all the parties, it may use its equity powers to grant full relief in one suit, including the adjudication of Catalyst Research's cause of action against Mine Safety.

Defendants' motion to dismiss the complaint is denied. Orders accordingly may be submitted by plaintiff's counsel on notice to defense counsel.

---

[12] Hawes v. Oakland, 104 U.S. 450, 26 L.Ed. 827; Rule 23(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[13] Fletcher, Cyclopedia Corporations, Sec. 5977; United States Lines, Inc., v. United States Lines Co., 2 Cir., 1938, 96 F.2d 148; Piccard v. Sperry Corp., D.C. S.D.N.Y.1939, 30 F.Supp. 171; Birch v. McColgan, D.C.S.D.Cal.1941, 39 F.Supp. 358; Wachsman v. Tobacco Products Corp., D.C.N.J.1941, 42 F.Supp. 174, reversed without deciding this point, Wachsman v. Tobacco Products Corp., 3 Cir., 1942, 129 F.2d 815; Holmes v. Camp, 1917, 180 App.Div. 409, 167 N.Y. S. 840; Schneider v. Greater M. & S. Circuit, 1932, 144 Misc. 534, 259 N.Y.S. 319 allowed such an action, although the court spoke of the "dubious right" of a stockholder to bring a "double derivative" action; Druckerman v. Harbord, 174 Misc. 1077, 22 N.Y.S.2d 595; Ryan v. L. A. & N. Ry. Co., 1879, 21 Kan. 365; see 50 Harvard L.R. 963.

[14] Sabre v. United Traction & Electric Co., D.C.R.I., 1915, 225 F. 601; Goldstein v. Groesbeck, D.C.S.D.N.Y.1941, 42 F.Supp. 419; DeVan v. United States, D.C.N.J.1943, 50 F.Supp. 992; retrial of Wachsman v. Tobacco Products Corp., note 13; Busch v. Mary A. Riddle Co. of Delaware, D.C.Del.1922, 283 F. 443, by dictum only.

[15] United States Lines, Inc., v. United States Lines Company, 1938, 96 F.2d 148, 151.

[16] DeVan v. United States, D.C.N.J. 1943, 50 F.Supp. 992, 995.